**Mike LILES, Appellant,**

v.

**Montie E. PHILLIPS, Appellee.**

**No. 2–83–198–CV.**

Court of Appeals of Texas,
Fort Worth.

Oct. 4, 1984.

Jearl Walker and Harold D. Hammett, Fort Worth, for appellant.

Bunton, Nolan, Ode & Cooper, and Lucius D. Bunton, Jr., Austin, for appellee.

Before FENDER, C.J., and HUGHES and JOE SPURLOCK, II, JJ.

## OPINION

FENDER, Chief Justice.

This is a legal malpractice action brought by appellee, Montie E. Phillips, against his former attorney, Mike Liles, appellant herein. From a judgment in favor of appellee for $18,000 actual damages and $6,000 attorney's fees, appellant appeals.

We reverse and render.

Appellee originally retained appellant's law firm to pursue an action in his behalf against the vendor, manufacturers, and the credit company which financed appellee's purchase of a truck. The underlying transaction commenced in September, 1972 when appellee purchased a truck from Graham International, Inc., of Sherman, Texas. The truck was manufactured by International Harvester Corporation, and the engine was manufactured by General Motors Corporation, both of the state of Michigan. Appellee experienced problems with the truck but was unable to obtain repairs under the warranties through Graham International, Inc. In April, 1974, appellee drove the truck to an International Harvester dealership in Oklahoma City, Oklahoma where the vehicle was disassembled, but never repaired. Appellee did not return to pick up the truck, and when appellee failed to make installment payments the finance company, International Harvester Credit Corporation, eventually repossessed the vehicle.

In 1975, appellee hired appellant's law partner, a member of the same law firm as appellant and co-defendant herein, to file a lawsuit to recover damages incurred by appellee as a result of the problems with his truck. Suit was filed on March 12, 1975 in state district court in Sherman, Texas against Graham International, Inc., General Motors Corporation, International Harvester Corporation, and International Harvester Credit Corporation. Responsibility for the handling of this suit was transferred by appellant's partner to appellant who

later determined that appellee's only valid claim appeared to be against Graham International, Inc. Thus, appellant allowed pleas of privilege by the other three defendants to be sustained without opposing such pleas, and these suits were transferred to Dallas County where nonsuits were subsequently entered against International Harvester Corporation, and International Harvester Credit Corporation. The suit against General Motors Corporation was dismissed for want of prosecution on March 9, 1979.

There were a number of delays in getting appellee's case against Graham International, Inc. set for trial, and also a number of pretrial delays. Some of these delays were apparently due to a clerical error by the district clerk in Sherman in mistakenly transferring appellee's case against Graham International, Inc. to the docket of the district court in Dallas, Texas when she transferred the cases pending against the other three defendants. In addition, there were a number of disputes between the parties and their lawyers regarding the taking of depositions, and delays resulting from the fact that appellant was engaged in an extremely lengthy trial in Lubbock, Texas.

Appellant, his co-defendant, and another attorney in appellant's law firm estimated the value of appellee's claim against Graham International, Inc. to be approximately $18,000, whereas appellee indicated that he wanted $90,600 (or, $90,800—the record is unclear as to which amount) if the parties were to settle the case without a trial. Apparently as a result of appellant's and appellee's divergent opinions regarding the settlement value of appellant's case against Graham International, Inc., and because of the delays incurred in getting the case to trial, appellee requested that appellant return his file so that he could take it to another law firm. Appellant returned appellee's file on August 15, 1978, and appellee thereupon discharged appellant and appellant's law firm from responsibility for handling his case. Appellee attempted to

find another law firm to handle the case, but testified that he was unable to do so.

On May 7, 1979, appellee filed the instant lawsuit against three defendants: appellant, the other attorney in appellant's law firm with whom appellee had originally dealt, and the law firm itself. Appellee then chose to litigate his case against Graham International, Inc. pro se, and this resulted in a jury verdict in appellee's favor; however, the trial court granted a judgment non obstante veredicto and rendered judgment in favor of Graham International, Inc.

Appellee's pleadings in the instant case alleged that in their handling of appellee's lawsuit the three defendants conducted themselves in an unprofessional manner and did not protect appellee's best interest. The following is a summary of appellee's contentions:

1. Defendants failed to keep appellee informed as to the status of his case despite appellee's attempts to be kept informed;

2. Defendants allowed pleas of privilege to be sustained in favor of International Harvester Corporation and International Harvester Credit Corporation, without opposing said pleas;

3. Defendants allowed a plea of privilege to be sustained in favor of General Motors Corporation by not complying with the laws and rules governing civil procedure in the State of Texas;

4. Defendants failed to make timely appearances in court and effectively permitted the three aforementioned defendant corporations to be released;

5. Defendants did not inform appellee of the above actions and misled appellee as to the reasons that these corporations were released;

6. Defendants agreed to a nonsuit on behalf of International Harvester Corporation and International Harvester Credit Corporation, without the knowledge and permission of appellee;

7. Defendants failed to prosecute appellee's cause of action and permitted unreasonable and unconscionable delays which damaged appellee's case;

8. Defendants' delays in prosecuting appellee's cause of action permitted necessary and expert witnesses who were necessary to prove up appellee's cause of action to lose all contact with appellee and with the defendants. Said witnesses eventually, through the defendants' negligence and gross negligence, were not available to appellee for the prosecution of his lawsuit;

9. On or about March 4, 1977, defendants failed to timely notify appellee of an agreement for appellee to be present for his deposition, and said act resulted in a $600.00 fine levied against appellee.

Appellee claimed that the defendants' aforementioned actions constituted common law causes of action for negligence and gross negligence in the handling of appellee's cause of action. Additionally, appellee alleged that these acts were in violation of the Texas Deceptive Trade Practices Act, TEX.BUS.COM.CODE ANN. sec. 17.50 (Vernon Supp.1984). As further violations of Secs. 17.50 and 17.45, appellee alleged that: 1) defendants breached their fiduciary duty to represent appellee with diligence, care and skill in protecting his legal rights; 2) defendants breached their covenant to act in good faith and to deal fairly in their representation of appellee; and 3) defendants' acts or omissions in their representation of appellee were unconscionable. Lastly, appellee alleged that he was entitled to reasonable attorney's fees pursuant to the D.T.P.A.

The jury returned a verdict in favor of appellant's law partner and no issues were submitted regarding appellant's law firm. With respect to the appellant, the jury found that although appellant failed to exercise the care, diligence, and judgment of a good and competent attorney in North Texas in causing the lawsuit against Inter-

national Harvester Corporation and International Harvester Credit Corporation to be dismissed, and in permitting the lawsuit pending against General Motors Corporation to be dismissed, appellant's acts were *not* a proximate cause of appellee's failure to obtain a recovery of money against any of these corporations. However, the jury did find that appellant failed to exercise the degree of care, diligence, and judgment of a good and competent attorney in North Texas *in actually litigating appellee's lawsuit pending against Graham International, Inc., prior to delivering appellee's file to appellee.* The jury further found that such failure was a proximate cause of the failure of appellee to obtain a recovery of money from Graham International, Inc., and that $18,000 was the sum of money which appellee would have in reasonable probability recovered from Graham International, Inc., but for appellant's actions. Although the jury returned a verdict awarding $18,000 actual damages, $6,000 punitive damages, and $6,000 in attorney's fees, the trial court entered judgment awarding only the actual damages and attorney's fees.

Appellant predicates his appeal upon eight points of error and appellee has raised eight cross-points of error. Inasmuch as several of the parties' contentions deal with appellee's deceptive trade practices' cause of action, we will initially discuss this matter. The pertinent special issues which were submitted to the jury and answered adversely to appellant, read as follows:

SPECIAL ISSUE NO. 7:

Do you find from a preponderance of the evidence that the Defendant attorneys failed to exercise the care, diligence, and judgment of good and competent attorneys in North Texas in failing to cause the lawsuit pending against Graham International in Sherman, Texas, to be tried before the file was delivered to Montie Phillips?

Answer "He failed" or "He did not fail" as to each of the following:

Mike Liles    ANSWER: He failed
[Reference to co-defendant is omitted.]

If you have answered "He failed" as to either of the attorneys in answer to Special Issue No. 7, then answer as to such attorney in Special Issue No. 8; otherwise, do not answer Issue No. 8:

SPECIAL ISSUE NO. 8:

Do you find from a preponderance of the evidence that such failure, if any you found in the preceding Issue, was a proximate cause of the failure of Plaintiff, Montie Phillips, to obtain a recovery of money from Graham International?

Answer "It was" or "It was not" as to each of the following:

Mike Liles    ANSWER: It was
[Reference to co-defendant is omitted.]
[Omitted also are the special issues as to damages and attorney's fees.]

In five cross-points of error appellee contends that the trial court erred in not submitting to the jury special issues regarding appellee's deceptive trade practices' cause of action. In general, failure to submit an issue shall not be deemed a ground for reversal of the judgment, unless its submission, in substantially correct wording, has been requested in writing and tendered by the party complaining of the judgment. TEX.R.CIV.P. 279. Additionally, TEX.R. CIV.P. 273 provides that a request by either party for submission of a special issue shall be made separate and apart from such party's objections to the court's charge. In the instant case, while the parties were in the judge's chambers and prior to the reading of the charge to the jury, appellee made certain oral "Objections And Exceptions To The Court's Charge" which were subsequently reduced to writing.[1]

---

1. Due to the somewhat unusual nature of this document, we will reproduce the text in full:

PLAINTIFF'S OBJECTIONS AND EXCEPTIONS TO THE COURT'S CHARGE

TO THE HONORABLE JUDGE OF SAID COURT:

The Plaintiff is pleased, but Plaintiff believes that there are other issues to be put before the jury.

Plaintiff believes that there should be some issue of false, deceptive or misleading practices and whether or not the Defendants' acts

All of these objections and exceptions were overruled by the trial court.

■ Appellee asserts that he has complied with the procedural requisites regarding the submission of special issues relating to his deceptive trade practices' cause of action. We disagree. Firstly, objections to the charge and requests for submission of issues are not alternatively permissible methods of complaining of the charge. *Hernandez v. Montgomery Ward & Co.*, 652 S.W.2d 923, 925 (Tex.1983). Secondly, we do not find that appellee's statements, all of which are prefaced "Plaintiff believes . . .", constitute compliance with Rule 279 which requires plaintiff to submit his proposed issues in substantially correct wording. Therefore, appellee may not complain of the trial court's failure to submit issues relating to his deceptive trade practices' cause of action. We overrule appellee's cross-points of error four through eight.

We will next address appellant's fifth point of error which contends that the trial court erred in awarding any judgment against appellant because appellee's cause of action was barred by a two-year statute of limitations. Appellee counters that a four-year statute of limitations applies pursuant to the Deceptive Trade Practices Act.[2] We need not decide which statute of limitations applies to appellee's cause of action under the Deceptive Trade Practices Act inasmuch as we have found that appellee has waived this cause of action by his failure to submit to the jury any special issues pertaining to this theory of recovery. Accordingly, we must next determine the appropriate statute of limitations for the common law action of legal malpractice.

■ A cause of action for legal malpractice is in the nature of a tort action and is thus governed by TEX.REV.CIV.STAT. ANN. art. 5526 (Vernon Supp.1984). *Citizens State Bank of Dickinson v. Shapiro*, 575 S.W.2d 375, 386 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.). Therefore, appellee's action must have been "commenced and prosecuted within two years after the cause of action shall have accrued, . . ." Article 5526. Our initial question is when appellee's cause of action arose. As this Court opined in *Pack v. Taylor*, 584 S.W.2d 484 (Tex.Civ.App.—Fort Worth 1979, writ ref'd n.r.e.):

> In malpractice actions against attorneys by their clients, absent contention of fraud or fraudulent concealment, the applicable period of limitation begins with date of "legal injury" which gives rise to the right to bring an action in tort; and, assuming that the date of *"legal injury" is the same as that on which the alleged negligence or breach of duty by the attorney occurred,* it begins to run at that time. The date of

are false, misleading and deceptive, and whether they were a producing cause of the injury to the Plaintiff.

Plaintiff believes that the Court needs to charge the jury with a Special Issue dealing with whether or not the Defendants' actions constituted a breach of their fiduciary relationship to the Plaintiff.

Plaintiff further believes that the Court needs to ask whether they need to find from a preponderance of the evidence that the Defendants acted in good faith with reference to the Plaintiff and whether or not their failure to act in good faith was a producing cause of the injury to the Plaintiff.

Plaintiff further believes that the Court needs to ask the jury whether or not the Defendants' actions constituted gross negligence, and whether or not that was a producing cause of damages to the Plaintiff.

Further, Plaintiff believes that there needs to be an issue before the jury which asks whether or not the jury believes the Defendants' actions were unconscionable and whether or not those unconscionable actions were a producing cause of injury to the Plaintiff.

2. Prior to August 27, 1979, the Deceptive Trade Practices Act contained no statute of limitations' provision. *See* 1977 Tex.Gen.Laws, ch. 216, sec. 1, at 600; 1975 Tex.Gen.Laws, ch. 62, sec. 1, at 149; 1973 Tex.Gen.Laws, ch. 143, sec. 1, at 322. In 1979, sec. 17.56A of the Deceptive Trade Practices Act was enacted, and it provided for a two-year statute of limitations. The limitation period enacted by the 1979 amendments, however, does not apply to "a cause of action that arose either in whole or in part prior to [August 27, 1979] the effective date of this Act." 1979 Tex.Gen.Laws, ch. 603, sec. 9, at 1332. Appellee herein contends that his cause of action arose in whole or in part prior to August 27, 1979, and is therefore governed by a four-year statute of limitations.

the "legal injury" is not the time it is discovered, or the date when actual damage is fully ascertained. The client's "legal injury" has accrued when the force which produces the injury is wrongfully put in motion and has caused harm such that damages exist for which suit may be maintained. [Emphasis in original opinion.]

*Id.* at 486.

The pertinent events which transpired in the instant case in this regard are as follows:

April, 1974—Accrual of appellee's original cause of action against Graham International, Inc., General Motors Corporation, International Harvester Corporation, and, International Harvester Credit Corporation.

Spring, 1975—Appellee retained appellant's law firm to handle his claim for damages.

March 12, 1975—Appellant filed suit in Sherman, Texas against the four above-named defendants.

August 15, 1978—At appellee's request, appellant returned appellee's file to appellee.

May 7, 1979—Appellee filed the instant legal malpractice case against appellant, appellant's law partner and appellant's law firm.

May 8, 1979—Appellant's law firm was served with citation.

October 8, 1979—Appellee proceeded to trial pro se in the Sherman case against Graham International, Inc. The trial court rendered a judgment N.O.V. against appellee.

June 15, 1981—Appellant was served with citation in the instant case.

April 25, 1983—Trial on the merits and judgment subsequently rendered against appellant herein.

■ In the case at bar, the jury found that appellant was negligent in not litigating the lawsuit pending against General Motors Corporation prior to returning the file to appellee. Therefore, we find that the legal injury, if one occurred, was complete on August 15, 1978 (the date appellee's file was returned to him by appellant), even though the actual damages may have occurred at a later date when appellee had a take nothing judgment rendered against him. *See Anderson v. Sneed,* 615 S.W.2d 898, 901 (Tex.Civ.App.—El Paso 1981, no writ), opinion on denial of rehearing, 618 S.W.2d 388. Accordingly, the two-year statute of limitations expired in August, 1980.

It is well-settled that the mere filing of a suit will not interrupt or toll the running of a statute of limitations; to interrupt the statute, the use of diligence in procuring the issuance and service of citation is required. *Rigo Manufacturing Company v. Thomas,* 458 S.W.2d 180, 182 (Tex.1970). Appellee's lawsuit against appellant was timely filed on May 7, 1979, well within the two-year period of limitations. However, although appellant's law firm was served with citation on May 8, 1979, service was not effectuated upon appellant until June 15, 1981—two years and one month after appellee filed the instant suit, and two years and ten months after the accrual of appellee's cause of action against appellant. We must next determine what effect this untimely service has regarding appellant's claim that appellee's cause of action is barred by limitations.

■ A statute of limitations' defense must be raised affirmatively by the pleadings or it will be deemed waived. TEX.R. CIV.P. 94; *B.L. Nelson & Associates v. City of Argyle,* 535 S.W.2d 906, 911 (Tex. Civ.App.—Fort Worth 1976, writ ref'd n.r. e.). In "Defendant's First Amended Original Answer" appellant properly pled this affirmative defense. As a general rule, the initial burden of proof is upon a defendant to show when a plaintiff's cause of action accrued, in order to demonstrate that the statute of limitations is applicable as a bar to a plaintiff's claim. *Hoffman v. Wall,* 602 S.W.2d 324, 326 (Tex.Civ.App.—Texarkana 1980, writ ref'd n.r.e.); *Naylor v. Gutteridge,* 430 S.W.2d 726, 734 (Tex.Civ. App.—Austin 1968, writ ref'd n.r.e.). In

the instant case, defendant/appellant sufficiently showed this date to be August 15, 1978. When a defendant affirmatively pleads the defense of limitations, and when failure to timely serve the defendant is shown, the burden then is upon the plaintiff to explain the delay. *Williams v. Houston-Citizens Bank and Trust Company*, 531 S.W.2d 434, 436 (Tex.Civ.App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.). In other words, because appellee herein failed to serve citation upon appellant within two years after the accrual of his cause of action, he had the burden of proving that he used due diligence in procuring the subsequent issuance and service of citation upon appellant. *See Rigo*, 485 S.W.2d at 182. This appellee wholly failed to do.

Appellee offered no explanation whatsoever concerning the delay between filing suit and service of citation upon appellant. The reasonableness of a plaintiff's delay in procuring issuance and service of citation is usually a question of fact but if no explanation is offered, its reasonableness cannot be factually determined. *Williams*, 531 S.W.2d at 436. We hold that an *unexplained* delay of ten months after the expiration of the statute of limitations is, as a matter of law, not due diligence in procuring issuance and service of citation. *See id.* Accordingly appellee's suit was barred by the two-year statute of limitations. Because of our holding we find it unnecessary to address appellant's other seven points of error and appellee's cross-points of error one through four which deal with alleged trial error.

The judgment of the trial court is reversed, and judgment is rendered that appellee take nothing.