ONE 1991 CHEVROLET BLAZER, VIN # 1GNDT13Z4M2302305, $1,351.96 In U.S. Currency and Approximately Twenty–Nine Pounds of Marihuana, Appellants.

v.

The STATE of Texas, Appellee.

No. 07–94–0291–CV.

Court of Appeals of Texas, Amarillo.

Aug. 25, 1995.

Law Offices of Jim B. Brown, Bob Blinderman, Canyon, for appellant.

Dallam County District Attorney, Barry E. Blackwell, Dumas, for appellee.

Before DODSON, BOYD and QUINN, JJ.

QUINN, Justice.

Appellant, Kurt Allen Simon, presents eleven points of error for review. Because the first three dispose of the appeal, we address only them. Through the three, Simon asks the novel question of whether the State of Texas timely initiated proceedings to forfeit his 1991 Chevrolet Blazer (Blazer) and a sum of cash. We answer no and reverse.

### FACTS

On October 12, 1993, an officer of the Texas Department Of Public Safety stopped Simon and another individual as they drove through Dalhart, Texas. Found inside the vehicle were approximately 29 pounds of marihuana. Simon was arrested and his blazer seized. The officer also seized, on the 12th of October, $535.99 owned by Simon and found in a "fanny pack."

On November 10, 1993, that is, 29 days after seizure, the State filed its "Notice of Seizure and Intention to Forfeit" the Blazer and the $535.99, under article 59.01 *et. seq.* of the Texas Code of Criminal Procedure. Though the district clerk issued citation within two days, the district attorney directed the sheriff to withhold service. Simon had permissibly left the State pending trial, and

rather than try to serve him out-of-state, the State opted to wait until he returned for docket call. Thus, citation of the impending forfeiture was not actually served until March 31, 1994.

## ARGUMENT

Article 59.01 *et. seq.* of the Texas Code of Criminal Procedure establishes the means by which the State may forfeit "contraband," that is, property, used in the commission of a crime. The provisions here at issue are found in paragraphs (a) and (b) of article 59.04. The former expresses that the government's attorney "shall commence [the] proceedings . . . not later than the 30th day after the date of the seizure." *Tex.Code Crim.Proc.Ann.* art. 59.04(a) (Vernon Supp. 1995). The latter dictates that a proceeding "commences . . . when the attorney representing the state files a notice of the seizure and intended forfeiture in the name of the state with the clerk of the district court in the county in which the seizure is made." *Id.* at art. 59.04(b). Simon argued that the statute required not only the timely filing of the notice but also to exercise reasonable diligence in perfecting service. By postponing service for approximately 140 days after the 30 day period ended, he continued, the State failed to act diligently. Responding, the State suggested that filing the notice alone sufficed. The trial court entered judgment forfeiting the property. We conclude that it did so erroneously.

### a. Legislative Intent Underlying the Statute

In addition to establishing the time within which suit must be filed, the statute also sets forth procedures used in resolving the matter. For instance, it directs that the case "proceed to trial in the same manner as in other civil cases." *Tex.Code Crim.Proc.Ann.* art. 59.05(b). Furthermore, the property owner must be named a party "as provided by the Texas Rules of Civil Procedure." *Tex.Code Crim.Proc.Ann.* art. 59.04(i). Next, certified copies of the notice must be served on the owner "in the same manner as provided for the service of process by citation in civil cases" and in accordance with the Rules of Civil Procedure. *Id.* at art. 59.04(b)(1) & (i). The parties to the action must also "comply with the rules of pleading as required in civil suits." *Id.* at 59.05(a) & (b).

■ Upon combining the foregoing directives, it appears that the legislature intended all involved to handle forfeiture proceedings akin to general civil actions. Indeed, there is little reason to conclude otherwise given that case law has historically considered them civil actions, *Dancy v. Cave,* 760 S.W.2d 40, 44 (Tex.App.—Amarillo 1988, no writ), despite their obvious relationship to criminal jurisprudence. So, because the legislature intended them to be like other civil suits, logic dictates that they be so treated.

### b. Diligence in Service

■ Next, according to Rule 22 of the Texas Rules of Civil Procedure, one "commences" a civil action by filing his petition with the appropriate court clerk. *Tex. R.Civ.P.* Rule 22. Though unmentioned in that rule, one other prerequisite to "commencing" a suit exists. It involves diligence. According to the Texas Supreme Court, the plaintiff must not only file his petition but also exercise reasonable diligence in perfecting service. *Rigo Mfg. Co. v. Thomas,* 458 S.W.2d 180, 182 (Tex.1970); *Reed v. Reed,* 158 Tex. 298, 311 S.W.2d 628, 631 (1958). This is so because the administration of justice abhors undue delay. Indeed, delay hampers the rectification of wrong and the vindication of right. *Southern Pac. Transp. Co. v. Stoot,* 530 S.W.2d 930, 931 (Tex.1975). Thus, to avoid this distasteful consequence and prevent the manipulation of justice, law demands diligence. The failure to so act, moreover, can result in the loss of the claim or opportunity sought. *See e.g., Rigo Mfg. Co. v. Thomas,* 458 S.W.2d at 182 (refusing to toll limitations because service was tardy); *Reed v. Reed,* 311 S.W.2d at 631 (refusing to abate a second suit filed by an opponent because the plaintiff in the first unduly delayed service).

■ The reasons why the foregoing diligence element must apply to forfeiture cases are two fold. First, and as previously devel-

oped, the legislature intended them to proceed and be treated as every other civil proceeding. Since civil suits in general are subject to the rule, so too should article 59.01 actions.

Second, the need for timely adjudication of the rights to and interests in property subject to forfeit is as great as, if not greater than, that pertaining to any other civil action. In article 59.01 actions, the State endeavors to deprive citizens of their property, both real and personal. Though the res must be "used" in the commission of a felonious criminal act, the owner's involvement may be established by less evidence than that required in a criminal case. *See Tex.Code Crim.Proc. Ann.* art. 59.05(b) (adopting the preponderance of evidence standard of proof rather than the beyond reasonable doubt standard utilized in criminal cases). Furthermore, actual conviction for the offense is not a condition of forfeiture. *See Tex.Code Crim.Proc. Ann.* art. 59.05(d) (stating that a final conviction for an underlying offense is not a requirement for forfeiture). Nor does acquittal insulate the property owner. *Tex.Code Crim.App.Ann.* art. 59.05(d) (stating that acquittal raises a *rebuttable* presumption of nonforfeitability). More importantly, while the case pends, the state is authorized to deny the owner access to his property unless he posts bond equal to the appraised value of the item taken. *Tex.Code Crim.Proc.Ann.* art. 59.02(b) & 59.02(c). Conceptually, the statute enables the government to deny a property owner access to his home until the case is finally adjudicated, irrespective of whether a jury has already acquitted him of guilt. This, no doubt, is a formidable power afforded the State, which power most likely underlies the legal penchant towards abhorring forfeiture and curtailing its scope. *See State v. Lot 10, Pine Haven Estates,* 900 S.W.2d 400, 402 (Tex.App.—Texarkana 1995,

no writ) (stating that the law abhors forfeitures and construes statutes permitting them strictly against forfeiture). Requiring diligence in service speeds final adjudication and diminishes the potentially horrendous side-effects inherent in article 59.01 *et. seq.*[1]

That the need for diligence goes unmentioned in the wording of article 59.04(b) matters little. So too is it unexpressed in Rule 22; yet, the Supreme Court implicitly considers it part of the rule. *See Rigo Mfg. Co. v. Thomas,* 458 S.W.2d at 182 (requiring diligence "even though ... [the] applicable special statute ... does not require that a suit be both 'commenced' and 'prosecuted' within the limitation period, but only that the suit be 'brought' within the period"). Consequently, we read article 59.04(b) as also mandating reasonable diligence in the service of process.[2]

### c. Application of Fact to Law

Here, suit was filed two days before the lapse of statutory authority. Though the clerk issued citation, actual service was delayed for another 140 days. No substantive reason was given for the postponement other than the State's reluctance to pursue "out-of-state" service.

 Normally, the question of diligence is one of fact. *Newman v. Broadus,* 847 S.W.2d 249, 251 (Tex.App.—Corpus Christi 1992, no writ); *Liles v. Phillips,* 677 S.W.2d 802, 808 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.). However, where no excuse is offered or the lapse of time coupled with the plaintiff's acts negate diligence, the lack of diligence will be found as a matter of law. *Id.* The excuse proffered here is *de minimis.* Furthermore, the resulting delay compares to that found unreasonable in other cases. *See e.g., Hansler v. Mainka,* 807 S.W.2d 3 (Tex.App.—Corpus Christi 1991, no

---

1. In diminishing the applicable limitations window from the two to four year space normally utilized in civil cases to 30 days, it seems that the legislature also wanted statutory forfeiture actions to quickly end. Permitting the state's attorney to file suit then postpone its resolution by withholding service hardly fosters such legislative intent.

2. Interestingly, the two are already worded alike. For instance, according to the forfeiture statute, one "commences" the proceeding by filing the requisite notice with the district clerk. *Tex.Code Crim.Proc.Ann.* Art. 59.04(b) (Vernon Supp. 1995). One "commences" a general civil suit by filing his petition with either the district or county clerk, depending upon the amount in controversy and the nature of the complaint. *Tex. R.Civ.P.* 22 (Vernon 1979).

writ) (six months delay); *Allen v. Bentley lab., Inc,* 538 S.W.2d 857 (Tex.Civ.App.—San Antonio 1976, writ ref'd n.r.e.) (six months delay); *Knox v. Donovan Lowery Ins. Agency,* 405 S.W.2d 160 (Tex.Civ.App.—Eastland 1966, no writ) (less than one month delay). Consequently, we hold as a matter of law that the 140 day lapse was fatal to the State's case.

Points of error one, two and three are sustained. The judgment is reversed and the cause remanded to the trial court for proceedings commensurate with this opinion.