

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-07-00061-CV
_____


$24,156.00 IN U.S. CURRENCY, Appellant

V.

THE STATE OF TEXAS, Appellee


On Appeal from the 8th Judicial District Court
Franklin County, Texas
Trial Court No. 9571


Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

OPINION

This is an appeal from a forfeiture proceeding brought under Chapter 59 of the Texas Code of Criminal Procedure in which the trial court ordered the forfeiture of $24,156.00 seized from Donald Rhyne when his vehicle was searched incident to his April 2002 arrest. Rhyne complains that the trial court erred as a matter of law by granting summary judgment in favor of the State. Specifically, he contends the State never perfected service of process.

I.      BACKGROUND

State Trooper Jason Graham pulled over Rhyne on April 10, 2002, for speeding, and Graham smelled the odor of burned marihuana and noticed a bottle of alcohol in the floorboard of Rhyne's rental car. Rhyne admitted to having marihuana in the car and was arrested. During a search of Rhyne's vehicle, Graham found marihuana and crack cocaine. He also found $24,156.00 in a grocery bag in the back seat of the car. Rhyne was charged with possession of a controlled substance and driving while intoxicated.[1] The State took the position that the money was contraband and,

---

[1]It appears these criminal charges were dismissed in June 2006 for violating Rhyne's right to a speedy trial. Although this matter was not fully addressed at the trial court level or before this Court, we note a developing split among the intermediate courts surrounding any impact the dismissal may have had:

A final conviction for an underlying offense is not a requirement for forfeiture under this chapter. An owner or interest holder may present evidence of a dismissal or acquittal of an underlying offense in a forfeiture proceeding, and evidence of an acquittal raises a presumption that the property or interest that is the subject of the hearing is nonforfeitable. This presumption can be rebutted by evidence that the owner or interest holder knew or should have known that the property was contraband.

therefore, subject to forfeiture. To that end, the State filed its "Original Notice to [sic] Seizure and Intention to Forfeit" on May 10, 2002, the last possible day on which it may have done so. *See* TEX. CODE CRIM. PROC. ANN. art. 59.04 (Vernon 2006). Citation issued on that same day. However, the record shows that the State never perfected service of process on Rhyne. We note that, even though Rhyne was in the Franklin County jail for some time, it is unclear whether Rhyne was still in Franklin County's custody at this point.[2]

Rhyne did not file an answer. Several months after the State filed its notice of forfeiture, in September 2002, Rhyne's purported attorney at the time, Chad Cable,[3] sent to the State a request for admissions. The State responded to that request shortly thereafter. Then, in November 2002,

---

TEX. CODE CRIM. PROC. ANN. art. 59.05(d) (Vernon 2006). At least one court, citing Article 59.05(d) only generally, has read the article to mean that evidence of a dismissal or acquittal raises the rebuttable presumption that the property is nonforfeitable. *See Gaston v. State*, 930 S.W.2d 222, 224 (Tex. App.—Austin 1996, no writ). Other courts have been called on to address Article 59.05(d) more specifically and have interpreted the article more narrowly. *See State v. $31,400*, 828 S.W.2d 112, 114 (Tex. App.—Houston [1st Dist.] 1992, writ denied) (holding that Article 59.05(d) allowed owner to present evidence of a dismissal but that only evidence of an *acquittal* entitled owner to the presumption that seized money was nonforfeitable); *$808.00 v. State*, No. 11-04-00184-CV, 2005 Tex. App. LEXIS 3262 (Tex. App.—Eastland Apr. 28, 2005, pet. denied) (same).

[2]Rhyne was later in the federal penitentiary. It is also unclear whether Rhyne was in federal custody at the time the State filed its notice. Rhyne represents that Franklin County lodged a detainer against him while he was in federal prison, suggesting that the State may have known, at some point, Rhyne's location. However, the record is not clear when the detainer was lodged.

[3]In his misnumbered response to the State's motion for summary judgment and in his brief, Rhyne asserts that he never agreed to hire Cable in this matter. As grounds to support his request to withdraw, Cable cited the following reasons in his motion: Rhyne's failure to respond to certified mail, his failure to remain in telephone contact with Cable, and his failure to pay the agreed fee.

3

Rhyne's mother sent to the district clerk a notice that his attorney had been terminated and sought a continuance. The notice also purported to grant power of attorney to Rhyne's mother and provided contact information for Rhyne through his mother.

On May 15, 2003, the State moved the trial court to deem as admitted the facts made the subject of the request for admissions and served the request on purported attorney Cable, who failed to appear at the hearing on the State's motion. On May 23, 2003, the trial court granted the State's motion and also granted Cable's motion to withdraw. For well over three years following, nothing was done in the forfeiture action.

Then, around September 2006, apparently having been informed during a telephone conversation with the district clerk's office that the money had been forfeited,[4] Rhyne sent a letter requesting documentation of the final judgment of forfeiture and providing contact information. Not having received a copy of the judgment but seemingly still under the impression that one had been signed, Rhyne filed a petition for a bill of review, which was given a new cause number (10420), and essentially sought review of an order yet to be entered in the original forfeiture proceeding (9571). Rhyne complained in his bill of review that he was never served with notice of the forfeiture proceeding.

---

[4]Rhyne claims that he contacted Franklin County and was told that the money had been forfeited. He was unable to discover the date or substance of the judgment of forfeiture, however, since, at the time, no judgment had been signed.

Within weeks, the State filed a motion for summary judgment in the forfeiture proceedings under cause number 9571 and served a copy of that motion on Rhyne. The State maintains that Rhyne did not respond to its motion for summary judgment, and it is partially correct. Rhyne did not respond to the State's motion for summary judgment in any pleading filed under cause number 9571. However, it appears from the documents included in the State's appendix that he did file "Plaintiff's Response to Motion for Summary Judgment" in his bill of review action. In fact, in its brief, the State acknowledges that Rhyne filed this response and that, in it, Rhyne at least attempts to respond to the State's motion for summary judgment. In that response, Rhyne again maintained that he never received notice of the suit seeking forfeiture. On November 21, 2006, the trial court signed its order granting the State's motion for summary judgment.

## II. APPLICABLE LAW

### A. Standard of Review

The lack of an answer, the controversy surrounding the attorney-client relationship, the deemed admissions, the remarkably long period in which the State did nothing at all, the prematurely filed bill of review, the State's motion for summary judgment based on deemed admissions, and the attendant confusion as to whether Rhyne responded to that motion are all factors that have burdened this case over the nearly six years it has taken to arrive here. Although this case now stands in a somewhat awkward procedural posture before the Court, we will treat the judgment as both parties do, in terms of summary judgment.

The propriety of a summary judgment is a question of law; therefore, an appellate court reviews de novo the trial court's granting of summary judgment. *Natividad v. Alexsis, Inc*., 875 S.W.2d 695, 699 (Tex. 1994). To be entitled to a traditional summary judgment, the movant needs to establish its entitlement to summary judgment on the issues expressly presented to the trial court by conclusively establishing all essential elements of its cause of action or defense as a matter of law. TEX. R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002); *Johnson County Sheriff's Posse, Inc. v. Endsley*, 926 S.W.2d 284, 285 (Tex. 1996).

It is well settled that a trial court may not grant a summary judgment by default, that is, the court may not grant a summary judgment because the nonmovant failed to respond to the motion when the movant's summary judgment proof is legally insufficient. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979); *Swedlund v. Banner*, 970 S.W.2d 107, 109–10 (Tex. App.—Corpus Christi 1998, pet. denied). The movant must still establish his or her entitlement to summary judgment by conclusively proving all essential elements of his or her cause of action or defense as a matter of law. *Clear Creek Basin Auth.*, 589 S.W.2d at 678. The nonmovant is not required to file a response to defeat a motion for summary judgment if deficiencies in the movant's own proof or legal theories defeat its right to judgment as a matter of law. *Medlock v. Comm'n for Lawyer Discipline*, 24 S.W.3d 865, 870 (Tex. App.—Texarkana 2000, no pet.).

However, if the respondent fails to file a response, the only ground for reversal he or she may raise on appeal is the legal insufficiency of the movant's summary judgment motion or proof.

*Medlock*, 24 S.W.3d at 870; *Pierson v. SMS Fin. II, L.L.C.*, 959 S.W.2d 343, 348 (Tex. App.—Texarkana 1998, no pet.). Rhyne contends that the trial court erred by granting the State's motion for summary judgment when the record demonstrated as a matter of law the State failed to timely serve process on him: "[H]ad the [trial] court considered the issue [of service of process], it would have found that none of the [State]'s pleadings or motions contained any claim of actual service of the Original Notice to [sic] Seizure and Intention to Forfeit Petition." We read his contention as a challenge to the legal sufficiency of the State's summary judgment motion and proof.

## B. Forfeiture Generally

The State's right to bring a forfeiture cause exists by statute, and not by virtue of the constitution or common law. *1976 Harley Davidson Motorcycle v. State*, 106 S.W.3d 398, 401 (Tex. App.—Corpus Christi 2003, no pet.); *State v. Benavides*, 772 S.W.2d 271, 273 (Tex. App.—Corpus Christi 1989, writ denied). In the statutory scheme, property, including currency, is subject to seizure and forfeiture if it is found to be contraband. TEX. CODE CRIM. PROC. ANN. art. 59.02(a) (Vernon 2006). Contraband is property used or intended to be used in the commission of certain felonies, or proceeds derived from those felonies. TEX. CODE CRIM. PROC. ANN. art. 59.01(2)(A)–(D) (Vernon Supp. 2007); *State v. Silver Chevrolet Pickup*, 140 S.W.3d 691, 692 (Tex. 2004). Specifically, money that is derived from or intended for use in manufacturing, delivering, selling, or possessing a controlled substance is subject to forfeiture. TEX. CODE CRIM. PROC. ANN. art. 59.01 (Vernon Supp. 2007), art. 59.02 (Vernon 2006); *$27,920.00 in U.S. Currency v. State*, 37 S.W.3d 533, 535

7

(Tex. App.—Texarkana 2001, pet. denied). We add that we employ rules of strict construction against forfeiture when the forfeiture is to the sovereign and is created by statute. *1976 Harley Davidson Motorcycle*, 106 S.W.3d at 402; *State v. Lot 10, Pine Haven Estates*, 900 S.W.2d 400, 402 (Tex. App.—Texarkana 1995, no writ).

### C. Article 59 Provisions Regarding Service

Since Rhyne's contentions on appeal focus on the State's apparent failure to effect service of process in accordance with Article 59.04, we, too, will focus on the concept of service of process. We first note that Article 59 requires the State to commence its forfeiture action no later than the thirtieth day after seizure of the property at issue. *See* TEX. CODE CRIM. PROC. ANN. art. 59.04(a). Article 59 also specifically provides that the rules governing service of process in general civil cases will apply to forfeiture proceedings. *See* TEX. CODE CRIM. PROC. ANN. arts. 59.04(b), 59.05; *14.9 Grams Methamphetamine v. State*, 28 S.W.3d 146, 147 (Tex. App.—Texarkana 2000, no pet.). Article 59.05(b) provides that all parties must comply with the rules of pleading as required in civil suits and that "all cases . . . shall proceed to trial in the same manner as in other civil cases." TEX. CODE CRIM. PROC. ANN. Art. 59.05(b) (Vernon 2006).

In a forfeiture proceeding, Article 59.04(b) requires service of process by citation to the owner of the property and any interest holder in the property. TEX. CODE CRIM. PROC. ANN. art. 59.04(b); *$6,453.00 and One Chevrolet Pickup v. State*, 63 S.W.3d 533, 534–35 (Tex. App.—Waco 2001, no pet.). A person who was in possession of the property at the time it was seized shall be

8

made a party to the proceeding. TEX. CODE CRIM. PROC. ANN. art. 59.04(j). A forfeiture cannot proceed to hearing unless the judge is satisfied that the provisions of the article have been followed. TEX. CODE CRIM. PROC. ANN. art. 59.04(*l*).

### D. Rules Regarding Service in Civil Suits

A civil action commences with the filing of a petition, but such petition must also be filed within the applicable statute of limitations. TEX. R. CIV. P. 22; *$6,453.00*, 63 S.W.3d at 536. A fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections. *Ortiz v. State*, 24 S.W.3d 603, 605 (Tex. App.—Corpus Christi 2000, no pet.). So, even when the petition is filed timely, the suit will be nonetheless barred by limitations unless the plaintiff also exercises due diligence in serving the defendant with process within the statute of limitations period. *See Gant v. DeLeon*, 786 S.W.2d 259, 260 (Tex. 1990) (holding that, though not expressed in TEX. R. CIV. P. 22, service of process is required to "commence" suit); *see also Ortiz*, 24 S.W.3d at 605–06 (holding that forfeiture proceedings, just as other civil actions, require reasonable diligence in service of process); *One 1991 Chevrolet Blazer, VIN #1GNDT13Z4M2302305 v. State*, 905 S.W.2d 443, 444–45 (Tex. App.—Amarillo 1995, no writ) (same).

If reasonable diligence is exercised, effective service may be made after the applicable limitations period, with the date of service relating back to the date that the petition was filed. *Gant*,

9

786 S.W.2d at 260; *$6,453.00*, 63 S.W.3d at 536. The duty to exercise diligence is a continuous one, extending until service is perfected. *See Allen v. Rushing*, 129 S.W.3d 226, 231 (Tex. App.—Texarkana 2004, no pet.). Generally, the question of reasonable diligence is a fact question; however, if no excuse for the lack of timely service is offered, or the time passed between filing of the suit and the State's actions negate the possibility that reasonable diligence existed, lack of diligence will be found as a matter of law. *One 1991 Chevrolet Blazer*, 905 S.W.2d at 445; *Three Thousand Six Hundred Thirty-Nine Dollars ($3,639.00) in U.S. Currency v. State*, 133 S.W.3d 698, 700–01 (Tex. App.—Corpus Christi 2003, no pet.). The two controlling factors that establish due diligence are (1) whether the plaintiff acted as an ordinary prudent person would act under the same circumstances, and (2) whether the plaintiff acted diligently up until the time the defendant was served. *$6,453.00*, 63 S.W.3d at 536.

We see the application of the rules regarding service of process as they operate with respect to forfeiture actions in *One 1991 Chevrolet Blazer*, in which the State filed its notice of seizure and intention to forfeit twenty-nine days after appellant Simon's property was seized. 905 S.W.2d at 443. Simon had permissibly left the state, and the State opted to withhold service instead of serving Simon out-of-state. *Id.* at 444. As a result, Simon was served 140 days after the State filed its notice of seizure, a delay the court considered unreasonable. *Id.* at 445–46. The State offered no excuse for the unreasonable delay other than a reluctance to pursue out-of-state service, an excuse the court

characterized as de minimus. *Id.* at 445. The court reversed and remanded the case, concluding that the State's failure to exercise due diligence was fatal to its action. *Id.* at 446.

On similar facts, when property owner Ortiz was not served until 167 days after the State filed its notice of seizure and intended forfeiture, the court agreed with Ortiz that the trial court erred by denying her plea in bar. *Ortiz*, 24 S.W.3d at 603–04. Again at issue was whether the State exercised due diligence in perfecting service. *Id.* at 604. After concluding that the State failed to do so, the court announced that the failure was fatal to the State's case and that such failure required dismissal of the State's case. *Id.* at 606. The court reversed and remanded the case to the trial court for further proceedings. *Id.*

In yet another case examining the State's diligence, when appellant King's property was seized in connection with his arrest for selling methamphetamine, he was placed in the McLennan County jail. *See $6,453.00*, 63 S.W.3d at 534–35. He was still in the county jail when the State mailed copies of its notice of seizure and the citation to King's home address, and, not surprisingly, the mail was returned as unclaimed. *Id.* at 535. Ultimately, King was convicted and sentenced in federal court. *Id.* Two years after it filed its notice of seizure and while King was incarcerated at the federal penitentiary, the State finally served King. *Id.* King filed an answer shortly thereafter, and the trial court signed a judgment in favor of the State. *Id.*

On appeal, King contended that the evidence was legally insufficient to show he was served in a timely manner. *Id.* King argued that the forfeiture action was barred by the statute of limitations

since the State failed to exercise due diligence in perfecting service on him. *Id.* To illustrate, King pointed out that the State first attempted to perfect service by mailing its notice of seizure and the citation to his home address when it knew or should have known that he was in the county jail. *Id.* at 536. Further, the State made no other effort during the period between that first attempt and the time at which he was actually served, nearly twenty-six months later. *Id.* The State offered no reason for the delay and, therefore, failed to show due diligence. *Id.* at 537. The court agreed, concluding that the trial court erred by not finding as a matter of law that the State's forfeiture action was barred by limitations. *Id.* The court reversed and rendered judgment that the State take nothing. *Id.*

The Corpus Christi court similarly concluded the State failed to exercise due diligence in perfecting service. *Three Thousand Six Hundred Thirty-Nine Dollars*, 133 S.W.3d at 699. As in the case at bar, the State filed its notice of seizure and intention to forfeit on the last possible day, and a deputy constable made two unsuccessful attempts at personal service within the next week and learned that property owner Hernandez was to be out of state for at least three to four weeks. *Id.* at 700. Approximately seven weeks later, the State moved for substituted service. *Id.* The trial court granted the motion and ordered that substituted service could be made by leaving a copy of the notice of seizure with Hernandez or with anyone over the age of sixteen at his address or by affixing the notice of seizure to the door if no one answered. *Id.* The State, "without realizing . . . what the order had said," requested service by posting at the courthouse door. *Id.*

Hernandez filed a plea in bar seeking dismissal of the action because the State failed to exercise due diligence in securing service of process. *Id.* The trial court denied his plea in bar and entered an agreed judgment in which Hernandez reserved the right to appeal the trial court's denial. *Id.* The appellate court concluded the State's noncompliance with the trial court's order for substituted service demonstrated a lack of diligence as a matter of law, reversed the trial court's judgment, and rendered judgment that the State take nothing. *Id.* at 702.

## III.    ANALYSIS

With the foregoing principles and applications in mind, we reiterate that the State commences a Chapter 59 forfeiture proceeding by filing its notice of seizure and intended forfeiture and by perfecting service of process. *See One 1991 Chevrolet Blazer*, 905 S.W.2d at 444. The State has a limitations period of thirty days after seizure in which to do both. TEX. CODE CRIM. PROC. ANN. art. 59.04(a); *Three Thousand Six Hundred Thirty-Nine Dollars*, 133 S.W.3d at 700–01; *$6,453.00*, 63 S.W.3d at 536.

Here, the record does not show the State perfected service, and the State offers no explanation for its failure. The State explains that it attempted service three times in the few days after it filed its notice, a rather meek assertion and one not even readily apparent in the record. The State made no further efforts to perfect service during the several years this matter remained pending. Since the State offers no explanation for its failure to serve Rhyne and since it never again attempted

13

service since May 2002, we conclude as a matter of law that the State failed in its duty to exercise due diligence in service of process.

On appeal, the State responds only that Rhyne is precluded from complaining of defective service on appeal since he failed to raise such an issue in a motion for new trial. We reject the State's contention, looking to the Texas Supreme Court's position:

> Finally, Wilson argues that Dunn has failed to preserve any complaint of defective service by not raising the issue in his motion for new trial. Rule 324 imposes no such requirement for preservation of such error. TEX. R. CIV. P. 324; *see Bronze & Beautiful, Inc. v. Mahone*, 750 S.W.2d 28, 29 (Tex. App.—Texarkana 1988, no writ); *American Universal Ins. Co. v. D.B. & B., Inc.*, 725 S.W.2d 764, 765 (Tex. App.—Corpus Christi 1987, writ ref'd n.r.e.).

*Wilson v. Dunn*, 800 S.W.2d 833, 837 (Tex. 1990); *see also Arredando v. State*, 844 S.W.2d 869, 871 (Tex. App.—Texarkana 1992, no writ) (recognizing that "[i]t is well settled that . . . a failure of service can be raised for the first time on appeal").

To the extent that purported attorney Cable's request for admissions could be construed as an appearance that could ordinarily waive a defect in service of process, we note that such request was made in September 2002 when the limitations period had expired on May 10, 2002. Similarly, the notice from Rhyne's mother was filed in November 2002, also well after the limitations period had run. A party's general appearance in a suit does not waive service of process when the appearance occurs after the limitations period has run and the plaintiff has not used due diligence in serving the party. *See James v. Gruma Corp.*, 129 S.W.3d 755, 760 (Tex. App.—Fort Worth

14

2004, pet. denied); *Taylor v. Thompson*, 4 S.W.3d 63, 66 (Tex. App.—Houston [1st Dist.] 1999, pet. denied).

## IV.  CONCLUSION

The State did not serve Rhyne with process within the applicable statute of limitations.  Nor does the record show that the State exercised due diligence in attempting service outside the statute of limitations.  Thus, the State may no longer remedy its failure, and its forfeiture action is barred by the applicable statute of limitations.[5]  We reverse the trial court's judgment and remand the cause to the trial court for proceedings consistent with this opinion and appropriate orders concerning the proper disposition of the property.  *See* TEX. R. APP. P. 43.3 (permitting remand when "necessary for further proceedings").

Jack Carter
Justice

Date Submitted:     October 5, 2007
Date Decided:      February 7, 2008

---

[5]Our holding is consistent with the distinction set forth in *Silver Chevrolet Pickup* regarding the proper remedy available for noncompliance with an internal timing directive and that available for noncompliance with a statute of limitations.  140 S.W.3d at 694 (citing *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 65 (1993)); *Ortiz*, 24 S.W.3d at 605.

15