BEAM, Circuit Judge.
The University of Minnesota appeals the district court’s [1] grant of summary judgment to defendants Chief Industries and Parker-Hannafin Corporation in this products liability case. We affirm.
I. BACKGROUND
Since 1969, the University has operated the Southwest Research Station near Lam-berton, Minnesota. The Southwest station, one of several agricultural research stations run by the University, consists of 680 acres on which the University grows various crops and conducts research. The University leases an additional 2,000 acres at the Southwest station to tenants who contribute a share of their crops as rent. All of the crops grown at the station are handled at on-site facilities.
In 1985, the University decided to purchase a new grain dryer for the Southwest station. Before the purchase, Dr. Wallace Nelson, the superintendent of the station since it opened in 1959, consulted Dr. Harold Cloud, an agricultural engineer in the University’s Department of Agricultural Engineering. Dr. Nelson described Dr. Cloud as a “drying specialist in ag[ricultural] engineering” and as “the expert, probably, in the United States on drying.” Appellant’s Appendix at 24, 25. Dr. Nelson stated that because of Dr. Cloud’s expertise, “he did a great deal of help on specifications, fan sizes, BTUs, all these sort of things.” Id. at 24.
After soliciting bids, Nelson purchased a dryer unit manufactured by a subsidiary of Chief Industries from a local distributor. The dryer was essentially a gas-powered heater and fan unit that the University attached to a concrete slab on the exterior of an existing grain drying structure. One component of the unit was an electronic solenoid valve that stops the flow of fuel to the unit when the air in the dryer reached a certain temperature. The solenoid was manufactured by a predecessor of Parker-Han-nafin.
On August 5, 1992, seven years after the University bought the Chief grain dryer, a fire damaged the structure to which the unit was attached. The University alleges that the Parker-Hannafin solenoid failed, causing the diyer to overheat and start the fire. The University brought suit against Chief and Parker-Hannafin, asserting theories of strict liability, failure to warn, and negligent design and manufacture. The district court concluded that the University was a “merchant in goods of the kind” and was thus barred from bringing tort claims under Minnesota Statutes § 604.10. Board of Regents of the Univ. of Minnesota v. Chief Indus., Inc., 907 F.Supp. 1298, 1302 (D.Minn.1995). On this basis, the district court granted summary judgment to the defendants. The University appeals.
II. DISCUSSION
We review the district court’s grant of summary judgment de novo. Thorn v. International Business Machines, Inc., 101 F.3d 70, 72 (8th Cir.1996). Summary judgment is proper only if the evidence taken in the light most favorable to the nonmoving party fails to create a genuine issue of material fact and one party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).
Section 604.10(a) of the Minnesota Statutes provides that “economic loss that arises from a sale of goods between parties who are each merchants in goods of the kind is not recoverable in tort.” Enacted in 1991, *1411 section 604.10 codified Minnesota’s preexisting rule that in commercial transactions the Uniform Commercial Code provides the sole remedy for economic loss arising out of the sale of goods, except for personal injury or damage to the product itself. Under this “economic loss” doctrine, a plaintiff may not recover in tort for damages to other property caused by a defective product, but is limited to contract actions such as breach of warranty. See Lloyd F. Smith Co. v. Den-Tal-Ez, Inc., 491 N.W.2d 11, 14 (Minn.1992).
The Minnesota Supreme Court has considered no economic loss cases since section 604.10 was enacted. In applying the doctrine in Den-Tal-Ez, however, the court explicitly referred to the statute (which was then pending in the state legislature) and adopted the statute’s language limiting tort recovery for “merchants in goods of the kind.” Id. at 17 & n. 7. We therefore agree with the district court that it is proper to construe section 604.10 in harmony with the principles set forth in Den-Tal-Ez and Hapka v. Paquin Farms, 458 N.W.2d 683 (Minn.1990).
In Hapka, the Minnesota Supreme Court held that “the Uniform Commercial Code must control exclusively with respect to damages in a commercial transaction which involves property damage only.” 458 N.W.2d at 688. Under Hapka, the inquiry focused on whether the sale of the defective product was a “commercial transaction” or a “consumer transaction.” See id. at 687. As the court explained, the U.C.C. barred tort claims for damage to other property in commercial transactions, but did not so limit actions that arose from consumer transactions. Id.
In 1992, the court revisited the economic loss doctrine in Den-Talr-Ez. In Den-Tal-Ez, a dentist purchased second-hand a motorized dental chair. 491 N.W.2d at 13. The dentist brought a product liability suit against the manufacturer after the chair allegedly caused a fire that damaged the dental office and the building where it was located. Id. The district court ruled that Hapka barred the plaintiffs’ tort claims, and the Minnesota Court of Appeals affirmed. Id. The state supreme court reversed. Leaving intact Hapka’s basic distinction between commercial and consumer transactions, id. at 17, the court explained that the economic loss doctrine applied to losses caused by a product sold by “a merchant dealing with another merchant in goods of the kind.” Id. at 15.
This brings us to this appeal’s sole question: is the University a “merchant in goods of the kind”? That is, is the University a merchant with respect to grain drying heaters such as the one that allegedly caused the fire at the Southwest station? If, as the district court concluded, the University is a merchant with respect to grain dryers, then it may not recover in tort under either the statute or the Hapka/Den-Tal-Ez rule.
Under the U.C.C. a “merchant” is:
a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.
Minn.Stat. § 336.2-104(1). A party is thus a “merchant” of goods for purposes of the U.C.C. either: (1) by dealing in those goods; or (2) by way of specialized knowledge of the goods. There is no dispute that the University is not a dealer in grain drying units, so if section 604.10 applies, it is only because the University has specialized knowledge of such products. Notwithstanding section 336.2-104(l)’s dual definition of “merchant,” the University argues that a party must be a dealer to be a “merchant of goods of the kind” for purposes of section 604.10.
Den-Tal-Ez provides some support for the University’s position. The court in that case noted that “in a classic commercial transaction involving experienced merchants engaged in the buying and selling of their stock in trade” the recovery of loss is appropriately restricted to contractual remedies. 491 N.W.2d at 16. The University also points to Dietz Brothers, Inc. v. Klein Tools, Inc., No. C9-92-1136, 1993 WL 19709 (Minn.Ct.App. Jan.26, 1993). As part of a brief discussion, the court quoted the definition of “merchant” in section 336.2-104(1) and noted that “[a] *1412 ‘merchant’ also is defined as ‘[o]ne who is engaged in the purchase and sale of goods; a trafficker; a retailer; a trader.’ ” Id. at *2 (quoting Black’s Law Dictionary 890 (5th ed. 1979)).
We are not persuaded, however, that either of these cases requires that a “merchant in goods of the kind,” for purposes of section 604.10, be an actual dealer of the product. We note first that as an unpublished opinion, Dietz has no precedential value. Minn.Stat. § 480A.08, Subd. 3. Even as persuasive authority, however, Dietz does not greatly aid the University, as the court in that case explicitly cited section 336.2-104(1) in discussing whether the plaintiff was a merchant in goods of the kind. The Dietz court did not indicate that the “specialized knowledge” category of the statute’s definition of “merchant” did not apply in the context of the economic loss doctrine.
Similarly, while the court in Den-Talr-Ez indicated that a dealer in a commercial transaction involving its normal stock-in-trade was a merchant for purposes of the economic loss doctrine, it did not indicate that the rule applies only to dealers. Rather, the court was more concerned with whether the plaintiffs sophistication, knowledge, and bargaining power with respect to a particular product indicates the wisdom of providing for “reasonable containment of the risk of a defective product ... by providing an exclusive warranty remedy.” Den-Tal-Ez, 491 N.W.2d at 16. A plaintiff who regularly buys and sells goods of the kind will in all likelihood have such knowledge and sophistication, but so may a similarly knowledgeable party who is not a dealer. Neither the statute nor the ease law indicates that section 604.10 should be limited to dealers. Indeed, to so narrow section 604.10 would create an unwarranted inconsistency with section 336.2-104(l)’s dual definition of “merchant.”
In the present ease, the University’s knowledge and experience with respect to grain dryers constituted “knowledge or skill peculiar to the practices or goods involved in the transaction.” Minn.Stat. § 336.2-104(1). The University had purchased a number of such units over the prior thirty years, and had the advantage of a centralized purchasing department that solicited bids for the purchase. Before purchasing the unit, the Southwest station’s superintendent (who had been responsible for other such purchases) consulted a prominent expert in grain drying, who provided advice on such specifications for the unit as fan size and BTU requirements.
To be sure, not all large, sophisticated purchasers are necessarily merchants in goods of the kind they buy, just as an informed and careful individual consumer does not become a “merchant.” But based on the particular and undisputed facts of this case, we agree with the district court that the University possessed specialized knowledge with respect to the grain drying unit, and that “[t]his knowledge informed the University of the risks posed by the product and the potential damage to both the product and other property that could result from product failure.” Board of Regents, 907 F.Supp. at 1302. The district court properly concluded that, as a matter of law, the University was a merchant of goods of the kind and that section 604.10 bars any action in tort.
III. CONCLUSION
For the foregoing reasons, we affirm the judgment of the district court.

. The Honorable David S. Doty, United States District Judge for the District of Minnesota.