**JENNIE–O FOODS, INC., Respondent,**

v.

**SAFE–GLO PRODUCTS
CORP., Defendant,**

**Gillis Agricultural Systems, Appellant.**

No. C5–97–2321.

Court of Appeals of Minnesota.

Aug. 11, 1998.

L. Wayne Larson, Jon C. Saunders, Anderson Larson Hanson & Saunders, P.L.L.P., Willmar, for appellant.

Eric J. Magnuson, Stanley E. Siegel, Jr., Kristin J. Allard, Rider, Bennett, Egan & Arundel, LLP, Minneapolis, for respondent.

Considered and decided by WILLIS, P.J., HUSPENI and SCHULTZ, JJ.*

## OPINION

HUSPENI, Judge.

Appellant moved unsuccessfully for summary judgment on the ground that respondent was precluded from recovering in tort by the economic loss doctrine set out in Minn.Stat. § 604.10(a). A jury then determined that appellant was liable for fire damage to respondent's property. Appellant challenges the denial of summary judgment, the sufficiency of the evidence on causation, certain of the trial court's evidentiary decisions, and the denial of appellant's motion for a new trial. We conclude that respondent is not a merchant of heaters within the meaning of Minn.Stat. § 604.10(a), that the verdict is supported by the evidence, and that there was no abuse of discretion in the evidentiary decisions or in the denial of the motion for a new trial.

## FACTS

■ Respondent Jennie–O Foods, Inc., operates turkey farms that include brooder barns. The floors of these barns are covered with wood shavings as bedding for young turkeys. Before use, the barns are heated to 80 or 90 degrees by heaters suspended from the rafters to about 20 inches above the floor. Two barns were destroyed by fire during this

---

\* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap-   pointment pursuant to Minn. Const. art. VI, § 10.

heating process; one in May 1993 and one in September 1993.

Believing that the fires were caused by pieces of hot metal falling from the heaters into the wood shavings on the barn floors, Jennie–O sued the heater manufacturers, Sibley Engineering and Sibley Industries (Sibley), and the heater distributor, appellant Gillis Agricultural Systems.[1]

Sibley and Gillis moved for summary judgment, arguing, inter alia, that the Uniform Commercial Code (U.C.C.) precludes tort remedies. The motion on U.C.C. issues was renewed after the release of *Regents of the University of Minnesota v. Chief Industries, Inc.,* 106 F.3d 1409 (8th Cir.1997), and again denied.

Sibley settled with a *Pierringer* release prior to trial.[2] The jury found Gillis 85% liable for the first fire and 60% liable for the second, and awarded damages of $257,419.34. Gillis's motion for judgment notwithstanding the verdict or a new trial was denied.

### ISSUES

1. Is Jennie–O a merchant within the meaning of Minn.Stat. § 604.10(a)?

2. Is there a theory of the evidence reconcilable with the jury verdicts on causation of the fires and liability for the second fire?

3. Did the trial court abuse its discretion in admitting the testimony of Jennie–O's expert and in excluding evidence of prior and subsequent fires?

4. Did the trial court abuse its discretion in denying Gillis's motion for a new trial on the ground that counsel for Jennie–O misstated the law in closing argument?

### ANALYSIS

**1. Is Jennie–O a merchant within the meaning of Minn.Stat. § 604.10(a)?**

The construction of a statute is a question of law and thus fully reviewable by an appellate court. *Hibbing Educ. Ass'n v. Public*

*Employment Relations Bd.,* 369 N.W.2d 527, 529 (Minn.1985).

Minn.Stat. § 604.10(a) (1996) provides that:

> Economic loss that arises from a sale of goods that is due to damage to tangible property other than the goods sold may be recovered in tort as well as in contract, but economic loss that arises from a sale of goods between parties who are each merchants in goods of the kind is not recoverable in tort.

The Minnesota Supreme Court and the eighth circuit diverge in their interpretations of this statute. *Lloyd F. Smith Co., Inc. v. Den–Tal–Ez, Inc.,* 491 N.W.2d 11 (Minn. 1992), concluded that a dentist was not a merchant in goods of the kind with respect to a dental chair and could therefore recover damages from a fire caused by the chair. In *Regents of the University of Minnesota v. Chief Industries, Inc.,* 106 F.3d 1409 (8th Cir.1997), the court concluded that the University of Minnesota was a merchant in goods of the kind in respect to grain dryers and therefore could not recover damages from a fire caused by the grain dryer.

*Regents* attempted to distinguish *Den–Tal–Ez* by resort to and application of the U.C.C. definition of "merchant." Minn.Stat. § 336.2–104(1) (1996) provides:

> A party is thus a "merchant" of goods for purposes of the U.C.C. either: (1) by dealing in those goods; or (2) by way of specialized knowledge of the goods.

The *Regents* court prefaced its application of this statutory definition by observing:

> [W]hile * * * *Den–Tal–Ez* indicated that a dealer in a commercial transaction involving its normal stock-in-trade was a merchant for purposes of the economic loss doctrine, it did not indicate that the rule applies only to dealers. Rather, the court was more concerned with * * * the plaintiff's sophistication, knowledge, and bargaining power with respect to a particular product * * *. A plaintiff who regularly buys and sells goods of the kind will in all

---

1. Jennie–O also sued Safe–Glo Products, a defunct company that did not respond to the complaint.

2. Sibley therefore takes no part in this appeal.

likelihood have such knowledge and sophistication, but so may a similarly knowledgeable party who is not a dealer.

*Id.* at 1412. *Regents* then concluded that because the University had purchased a number of grain dryers over the years, it had specialized knowledge of grain dryers and fit within the U.C.C. definition of "merchant." Therefore, reasoned the *Regents* court, the University was a "merchant in goods of the kind" within the meaning of Minn.Stat. § 604.10(a) and could not recover in tort. *Id.* at 1412.

We find persuasive, however, the well-reasoned dissent in *Regents.* Urging that the majority opinion contravened *Den–Tal–Ez* and was an incorrect statement of Minnesota law, Judge Lay noted:

> When [the legislature] enacted § 604.10(a) in 1991, had it so desired, [it] could have chosen the broad term "merchant" as generally defined by § 336.2–104(1) instead of "merchants in goods of the kind." The legislature's choice instead to incorporate the limiting language manifests its intent to narrow application of the economic loss doctrine.

*Id.* at 1413, (Lay, J., dissenting). In accord with *Den–Tal–Ez* and the *Regents* dissent, and based upon our independent conclusion that Minn.Stat. § 604.10(a) does not include within its provisions the broad definition of "merchant" contained in Minn.Stat. § 336.2–104(1), we hold that Jennie–O was not a merchant in goods of the kind with respect to heaters and is not barred from recovering in tort.

## 2. Sufficiency of the evidence

> On review, answers to special verdict questions will not be set aside unless they are perverse and palpably contrary to the evidence or where the evidence is so clear to leave no room for differences among reasonable people. The evidence must be viewed in a light most favorable to the jury verdict. If the jury's special verdict finding can be reconciled on any theory, the verdict will not be disturbed.

*Hanks v. Hubbard Broadcasting, Inc.,* 493 N.W.2d 302, 309 (Minn.App.1992) (citations omitted), *review denied* (Minn. Feb. 12, 1993).

## A. Causation of the fires

The jury's finding that the design of the heaters caused the fires was based on the testimony of Jennie–O's expert, who has been a full-time fire investigator for 13 years and has investigated "close to a thousand" fires. The expert testified that he located the area where the fire started and that in that area he found two heaters with parts of their venturi tubes missing. He also testified that in a barn identical with the one that burned, he fired up the heaters to see how they operated.

> We looked at numerous heaters and saw varying degrees of damage to that venturi tube. And while we were examining the heaters, we witnessed red-hot particles of metal falling off of this heater, and that is one of the things that I witnessed personally * * *.

When asked if he had an opinion within a reasonable degree of scientific certainty whether a piece of metal could have fallen off one of the heaters and into the wood shavings 20 inches below them, the expert answered, "Yes." When asked the basis for that opinion, he replied, "I observed it myself."

The expert also testified that he located the area of origin of the second fire, where he again found two heaters with parts missing.

> The opinion [on causation] is the same thing, that I feel that the metal is dropping out of the venturi tubes into the wood shavings directly beneath them.

The expert testified that he did less preliminary investigation of the second fire and took fewer steps to eliminate other possible causes of that fire because his experience with the first fire led him to believe the heaters probably caused the second fire.

Testimony of Jennie–O's expert provides more than sufficient basis for upholding the jury's verdict.

Gillis cites *Gerster v. Estate of Wedin,* 294 Minn. 155, 199 N.W.2d 633 (1972), to argue that the evidence was insufficient to establish causation because all other possible causes of

the fire were not eliminated. Appellant's reliance on *Gerster* is misplaced. In that case, the jury's verdict that a decedent had caused a fire by careless smoking was unsupported by any evidence that smoking caused the fire, that any smoking was in fact carelessly done, or that the decedent was the careless smoker. *Id.* at 160, 199 N.W.2d at 636. Here, the jury's verdict was based on expert testimony and on exhibits showing that the heaters had caused the fire.

Gillis cites *Marshall v. Co–Operative Oil,* 284 Minn. 549, 169 N.W.2d 395 (1969) (involving a fire found to be caused by a propane leak), to argue that the jury's verdict on causation of the second fire is unsupported. Again, this reliance is misplaced. Gillis quotes *Marshall* for the proposition that "where other causes are equally probable, there must be evidence which will permit the jury to discount or eliminate them." *Id.* at 551, 169 N.W.2d at 397. But Gillis reads that holding out of context. *Marshall,* in affirming the jury's award of damages, goes on to state:

> However, such evidence need not completely eliminate other causes. All that is required to sustain a verdict for plaintiff is sufficient evidence to permit the jury to find that more likely than not a leak in the supply line which resulted from defendant's negligence was the source of the accumulation of gas and the cause of the explosion and ensuing fire.

*Id.* The jury here could reasonably have decided it was more likely than not that the heaters caused the second fire as they had caused the first, even absent testimony eliminating other causes of the second fire. The jury's findings on causation of both fires are easily reconciled with the evidence.

### B. Liability for the second fire

■ Gillis argues that it had no liability for the second fire because Jennie–O did not remedy the situation that had allegedly caused the first fire, citing *Jack v. Applebaum's Food Markets,* 280 Minn. 247, 249, 158 N.W.2d 857, 859 (1968) (holding that a supermarket that had settled with a plaintiff injured by a floor drain had no indemnification action against the builder because the super-

market had known of the defect for five years). The position of Jennie–O here is distinguishable from that of the supermarket in *Jack,* and we do not believe that *Jack* precludes the jury's finding that Gillis was 60% liable for the second fire. Further, the jury's determination that Jennie–O was only 15% liable for the first fire but 40% liable for the second reflects the jury's awareness and consideration of the fact that Jennie–O had failed to replace the degraded parts of the heaters or install spark pans after the first fire.

### 3. Evidentiary rulings

> The question of whether to admit or exclude evidence rests within the broad discretion of the trial court and its ruling will not be disturbed unless it is based on an erroneous view of the law or constitutes an abuse of discretion. Entitlement to a new trial on the grounds of improper evidentiary rulings rests upon the complaining party's ability to demonstrate prejudicial error.

*Uselman v. Uselman,* 464 N.W.2d 130, 138 (Minn.1990) (citation omitted).

### A. Expert opinion evidence

■ Gillis argues that the trial court should have excluded testimony of Jennie–O's expert because the items about which he testified were not available for Gillis's experts' inspection, citing *Patton v. Newmar Corp.,* 538 N.W.2d 116, 117–18 (Minn.1995) (excluding plaintiff's expert testimony because plaintiff's expert had removed and lost some components of the evidence before defendant's expert saw them). Gillis's experts testified, however, that they never attempted to view the heaters that formed the basis for testimony of Jennie–O's expert; nor did they conduct their own investigation and testing. Gillis's experts were not denied access to the heaters by Jennie–O.

There was no abuse of discretion in the trial court's allowance of the testimony of Jennie–O's expert.

### B. Exclusion of testimony about the February 1997 fire

■ Gillis argues that the trial court erred in granting Jennie–O's motion to exclude tes-

timony about a February 1997 fire on the grounds that it would introduce irrelevant issues and that there was evidence indicating arson might have caused the 1997 fire. We disagree. Jennie–O's expert testified that he had ruled out arson as a possible cause of the 1993 fires. Although Gillis argues that the jury should have been able to "weigh the reasonableness" of this testimony in light of the knowledge that arson might have caused the 1997 fire, no support for this position was offered. The trial court did not abuse its discretion in excluding the evidence.

### C. Exclusion of evidence about a 1975 fire

■ Gillis argues that the trial court erred in granting Jennie–O's motion to exclude evidence of a 1975 fire and argues that the jury should have decided whether that fire was too remote to be relevant. We find no error. Determinations as to the relevance of evidence are the province of the court, not the jury. *See, e.g., Uselman,* 464 N.W.2d at 138. Gillis offers no support for its position that the issue of relevance should have been decided by the jury rather than by the court.[3]

### 4. Closing argument

■ Gillis alleges that counsel for Jennie–O misstated the law during closing argument. As a threshold matter, we note that this issue may not be properly before the court.

> In order to raise the claim of misconduct there must be an objection at the time of the alleged misconduct, or at the close of the argument when it has been taken down by the reporter, and before the jury retires; also a request for a corrective action and the failure of the court to act.

*Wild v. Rarig,* 302 Minn. 419, 433, 234 N.W.2d 775, 786 (1975). Gillis did not object during or after the closing arguments and did not request a curative instruction, and offers no explanation on appeal for its failure to do so. Even if we were to address this issue on its merits, we would find no error of law in the challenged argument. Gillis claims that counsel for Jennie–O incorrectly told the jury in closing argument that Gillis had, and did not meet, the burden of proving an alternative cause of the fire. Counsel for Jennie–O actually told the jurors, however, that Gillis wanted them to believe the fire had been caused by arson, or by a gas failure, or by electrical failure, but had not proved any of these causes.[4] This was not a misstatement of law.

### DECISION

Jennie–O was entitled to recover in tort because it was not a "merchant in goods of the kind" with respect to heaters. The jury's verdict is supported by the evidence, and the trial court did not abuse its discretion in its evidentiary rulings or in its denial of the motion for a new trial.

**Affirmed.**

---

3. The trial court also sustained Jennie–O's objection when a witness was asked about that fire during his testimony. Gillis's argument that the trial testimony impeached the witness is not persuasive. The witness, an employee of Jennie–O, had testified during a deposition that he had heard talk of a fire caused by a fallen heater but did not know that the actual cause of that fire had ever been determined and testified at trial that he was not aware of any heaters falling to the ground and causing fires. There is no conflict inherent in this testimony.

4. Gillis implies that counsel for Jennie–O should have told the jury that Jennie–O had the burden of disproving every other possible cause of the fire. Again, Gillis relies on *Marshall. Marshall,* as noted earlier, actually holds that if a fire had other equally probable causes, there must be evidence that will permit a jury to discount those causes, and that a verdict for a plaintiff requires the jury to find only that it was more likely than not that the cause advanced by the plaintiff started the fire. *Id.* at 551, 169 N.W.2d at 397.