**United States Court of Appeals**

**FOR THE EIGHTH CIRCUIT**

———————

No. 96-2761

———————

Northwest Airlines, Inc.,        *
a Minnesota corporation,      *
                                   *
    Plaintiff/Appellee,     *
                                   *  Appeal from the United States
        v.            *  District Court for the
                                 *  District of Minnesota.
Astraea Aviation Services,    *
Inc., doing business as Dalfort  *
Aviation, a Texas Corporation,  *
                                 *
    Defendant/Appellant.    *

———————

Submitted:  March 12, 1997

Filed:  April 24, 1997

———————

Before MAGILL and MURPHY, Circuit Judges, and GOLDBERG,[1] Judge.

———————

MURPHY, Circuit Judge.

    Northwest Airlines, Inc. (Northwest) contracted with Astraea Aviation Services, Inc. (Astraea) for Astraea to perform routine maintenance on Northwest aircraft and to refurbish other newly acquired aircraft. After problems arose in completing the work, Northwest sued Astraea for breach of contract in Minnesota state court. Astraea removed the case to federal court and counterclaimed, alleging contract and tort claims against

———————

[1]The Honorable Richard W. Goldberg, Judge, United States Court of International Trade, sitting by designation.

Northwest.  The district court[2] denied Astraea's motion to dismiss for lack of personal jurisdiction and then granted Northwest's motion for summary judgment on Astraea's counterclaims.  We affirm.

In late 1993, representatives of Astraea attended several meetings in Minnesota concerning proposals for undertaking work to refurbish aircraft which Northwest had purchased from another carrier. These meetings included a preliminary meeting attended by several potential bidders for the refurbishment contracts, as well as meetings where Astraea submitted proposals and negotiated the refurbishment contracts.  In addition, Astraea made numerous phone calls to Northwest's offices in Minnesota during this time.

Several contracts resulted.  On December 10, 1993, the first refurbishment contract was executed by the parties in Minnesota.  This contract was amended by a letter agreement in March 1994, which also created a second refurbishment contract and provided that Astraea would refurbish additional planes.  Finally, the parties then entered into a maintenance contract in September 1994, under which Astraea was to provide routine maintenance for some Northwest aircraft.

All three contracts contained choice of law provisions stating that the laws of Minnesota would govern.  The refurbishment contracts stated that they "shall be deemed entered into within" Minnesota, and the maintenance contract contained a choice of forum provision which stated that "[Astraea] hereby submits to the jurisdiction and venue of the courts of the State of Minnesota with respect to all disputes arising hereunder."

---

[2]The Honorable Richard M. Kyle, United States District Judge for the District of Minnesota.

After the contracts were executed, Northwest began delivering aircraft to Astraea in Dallas, sending twenty-five planes to Astraea's hangars over the course of more than a year. Northwest stationed some of its employees in Dallas to oversee the work and sent to Dallas engineering information, operating manuals, and parts to be used in the planes from various locations, including Minnesota. Astraea representatives also traveled to Minnesota on at least three occasions to discuss issues under the contracts. As the work progressed, disputes arose about its quality, and there were delays in completing the aircraft.

After these problems arose, a reporter for a Minneapolis newspaper contacted a Northwest representative at its Minnesota headquarters about the disputes. The representative told the reporter that Northwest had concerns about the quality of Astraea's work, including defective parts and a leaky fuel line and undetected tail crack on one of the aircraft. Those statements were included in an article in the Minneapolis newspaper. Copies of the article were faxed to Northwest employees in Texas, and Astraea claims that a Northwest employee distributed copies of the faxed article to Astraea customers. A Texas newspaper also reprinted the article in Texas.

On July 14, 1995, Northwest sued Astraea in Minnesota state court under all three contracts,[3] alleging that Astraea had

---

[3]Astraea had previously filed a complaint in Texas state court on July 12, 1995; it effected service on Northwest on July 18. Under Texas law, a suit is commenced when it is filed, as long as the plaintiff exercises diligence in effecting service. One 1991 Chevrolet Blazer v. State, 905 S.W.2d 443, 444 (Tex. Ct. App. 1995). Northwest commenced its action under Minnesota law on July 14 when it filed and served Astraea. Minn. R. Civ. P. 3.01. The counterclaims filed in this action are basically identical to the claims asserted by Astraea in its Texas complaint.

breached the contracts by delivering the planes late and not performing to specifications.  Astraea removed the suit to federal district court and moved to dismiss for lack of personal jurisdiction.  After the district court ruled that Northwest had made a sufficient prima facie showing of jurisdiction, Astraea  counterclaimed, alleging breach of contract, fraud, and defamation by Northwest as well as other tort and unjust enrichment claims.  Northwest pled the affirmative defense of accord and satisfaction to the breach of contract claims and moved for summary judgment on the counterclaims.  After the district court granted the motion, the parties settled the remaining claims which were dismissed with prejudice.  Astraea appeals the assertion of jurisdiction over it and the dismissal of its counterclaims.

I.

Astraea claims there was no personal jurisdiction over it in Minnesota because it did not have a "general presence" in the state and the acts giving rise to the claims did not occur in it.  The district court's decision on personal jurisdiction is reviewed de novo.  <u>Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.</u>, 51 F.3d 1383, 1387 (8th Cir. 1995).

The Minnesota long-arm statute, Minn. Stat. § 543.19, is applied to the fullest extent permitted under the due process clause of the fourteenth amendment.  <u>Valspar Corp. v. Lukken Color Corp.</u>, 495 N.W.2d 408,  410-11 (Minn. 1992).  The due process clause requires that a defendant have sufficient minimum contacts with the forum so that traditional notions of fair play and substantial justice are not offended.  <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945).  To establish sufficient minimum contacts, a defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum

state, thus invoking the benefits and protections of its laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958). Three primary factors, (1) the nature and quality of the contacts, (2) the quantity of the contacts, and (3) the relation of the cause of action to the contacts, are then considered, as well as two secondary factors, (1) the interest of the forum state in the litigation, and (2) the convenience of the parties, to determine whether personal jurisdiction comports with fair play and substantial justice. Minnesota Min. & Mfg. v. Nippon Carbide Indus., 63 F.3d 694, 697 (8th Cir. 1995), cert. denied, 116 S. Ct. 1288 (1996).

Astraea claims that the choice of law clauses in the contracts, telephone calls into the state, and meetings in Minnesota were not sufficient to create personal jurisdiction when viewed in the context of the parties' dealings. Personal jurisdiction depends upon a "defendant's contacts with the forum in the aggregate, not individually" and the "totality of the circumstances." Northrup King, 51 F.3d at 1388. While a choice of law provision in itself is insufficient to create personal jurisdiction, it remains a relevant consideration in determining whether a defendant has purposefully availed itself in the forum state. Wessels, Arnold & Henderson v. National Med. Waste, Inc., 65 F.3d 1427, 1434 (8th Cir. 1995). Phone calls into a state are also a relevant contact, although they also do not in themselves establish jurisdiction. See Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd, 89 F.3d 519, 523 (8th Cir. 1996).

Astraea had several contacts with Minnesota which related to the disputed contracts under which Northwest brought its breach of contract claims. Some relevant contract discussions took place in Minnesota, and representatives of Astraea went there on several

occasions to negotiate the contracts in late 1993. In one of these meetings the parties signed a letter of intent and drafted the tentative form of the refurbishment contract. Astraea made over 200 phone calls to Northwest in 1993, and the first refurbishment contract was signed by both parties in Minnesota in December 1993. Over the course of the contractual period, Astraea representatives went to Minnesota at least three more times to discuss the contracts in 1994 and 1995.

All three contracts which Northwest and Astraea negotiated stated that they would be governed by Minnesota law, and Astraea expressly agreed in the maintenance contract to submit to the jurisdiction of Minnesota courts for any disputes arising under that contract. These provisions and Astraea's other state contacts related to the contracts show that it "purposefully availed" itself of conducting business in Minnesota and that it could have reasonably expected to be sued there. The district court did not err in denying the motion to dismiss for lack of personal jurisdiction.

II.

Astraea appeals from the grant of summary judgment on its breach of contract counterclaims concerning the first refurbishment contract. It argues that the district court incorrectly concluded that Northwest's payment of a final bill presented by Astraea for work done under that contract was a settlement for those claims and resulted in an accord and satisfaction. Summary judgment is reviewed de novo. Stevens v. St. Louis Univ. Med. Ctr., 97 F.3d 268, 270 (8th Cir. 1996).

Astraea concedes that Minnesota law governs its breach of contract counterclaims and Northwest's defense of an accord and

satisfaction because of the choice of law provisions in the contracts. Under Minnesota law, an accord and satisfaction may occur "when a creditor accepts part payment of an unliquidated debt which the debtor tenders in full satisfaction of the debt . . . and the creditor accepts that offer." Don Kral Inc. v. Lindstrom, 173 N.W.2d 921, 923 (Minn. 1970). It may be expressed or implied from circumstances which clearly indicate the intent of the parties. Roaderick v. Lull Eng'g Co., 208 N.W.2d 761, 764 (Minn. 1973).

After a dispute arose concerning five aircraft to be worked on under the first refurbishment contract, representatives of Astraea and Northwest met. Astraea told Northwest that it had incurred damages of $2.8 million because of Northwest's hindrance and delays, including delays in providing adequate parts and documentation on the aircraft. Northwest refused to pay the $2.8 million, and the parties then exchanged several letters about the demand for payment.

In the first letter, Northwest's project manager stated:

> "As per our agreement to review [Astraea's] claims for additional payment with regard to aircraft 9880, 9881, 9882, 9883, 9884, I would like to have you detail the claims with substantiation . . . .Once I receive this data, I will be in contact with you to work out the final resolution."

Astraea responded to this letter, stating that it had attached a final item for Northwest's consideration "[i]n accordance with our agreement for final settlement on 9880-9884." Astraea also stated that "if Northwest accepted" this last item, Astraea would consider it the final billing for the project. Northwest then responded that it had reviewed the "final settlement proposal . . . for

aircraft 9880-9884," and that it would pay the amount.  Astraea submitted a final invoice, which Northwest paid.

Astraea argues that it did not intend to create an accord and satisfaction through these letters.  The plain language of the letters, however, expresses the parties' understanding that these negotiations were to provide the "final resolution" of Astraea's claims relating to the five aircraft.  The language of the letters indicates that if Northwest accepted Astraea's proposed amount, its payment of that amount was to be the "final settlement" in relation to claims for these five aircraft.  Astraea's assertion that it had a different subjective intent cannot be the basis for finding there was no accord and satisfaction when the plain language of the letters clearly expressed the parties' objective intent to settle the original claims.  See Total Equip. Leasing Corp. v. LaRue Inv. Corp., 357 N.W.2d 347, 350 (Minn. Ct. App. 1984) (parties' objective intent determines whether there is an accord and satisfaction); see also Goldberger v. Kaplan, Strangis and Kaplan, P.A., 534 N.W.2d 734, 737 (Minn. Ct. App. 1995) (assertion that party did not subjectively intend to release all claims does not affect the release without a showing of mutual mistake).  Northwest was thus entitled to summary judgment on these counterclaims.

III.

Astraea argues that the district court erred in its choice of law analysis by determining that Minnesota law applied to all the tort counterclaims and in granting summary judgment on them.  Astraea brought several tort claims, including claims for defamation, libel, slander, negligent breach of contract, and misrepresentation, as well as claims for unjust enrichment and violation of the Texas Deceptive Trade Practices Act. Tex. Bus. & Com. Code Ann. §§ 17.41 et seq.  Although Astraea concedes that

Minnesota law applies to its breach of contract counterclaims, it argues that Texas law should apply to the remainder of the claims because the conduct giving rise to them occurred in Texas. A choice of law determination is reviewed de novo, Horn v. B.A.S.S., 92 F.3d 609, 611 (8th Cir. 1996), as is a grant of summary judgment. Stevens, 97 F.3d at 270.

A.

Each refurbishment contract stated: "This Agreement shall be deemed entered into within and shall be governed by and interpreted in accordance with the laws of the State of Minnesota . . . ." Minnesota generally recognizes choice of law clauses. Hagstrom v. American Circuit Breaker Corp., 518 N.W.2d 46, 48 (Minn. Ct. App. 1994). Astraea asserts, however, that the contractual choice of law provisions do not govern the negligent performance, misrepresentation, deceptive trade practices, and unjust enrichment claims because they are not contract claims.

Astraea's claims for negligent performance, misrepresentation, deceptive trade practices, and unjust enrichment raise issues of performance and compensation for work done under the refurbishment contracts. Although mainly styled as torts, these claims stem from Northwest's alleged failure promptly to provide functioning parts and adequate support for the refurbishment project, as required under the contracts. The unjust enrichment claim concerns the amount of compensation which Astraea should receive for refurbishing aircraft pursuant to a contract. These claims are closely related to the interpretation of the contracts and fall within the ambit of the express agreement that the contracts would

be governed by Minnesota law.  Astraea thus consented to the application of Minnesota law to such claims.[4]

Astraea contends that even under Minnesota law, the district court erred in dismissing its fraudulent and negligent misrepresentation counterclaims.  In Astraea's answer and counterclaims, it asserted that Northwest made misrepresentations to it before the contracts were executed concerning facts relevant to bidding.  These statements included representations that five of the sixteen aircraft would be "sister ships" and that Northwest would provide technical support, ferry the planes quickly, and promptly provide Astraea with material lists and other information.

In order to support a fraud claim under Minnesota law, a misrepresentation must relate to a past or present fact.  See H.J., Inc. v. International Tel. & Tel. Corp., 867 F.2d 1531, 1546 (8th Cir. 1989). Broken promises generally do not constitute fraud, International Travel Arrangers v. Northwest Airlines, Inc., 991 F.2d 1389, 1402 (8th Cir. 1993) (applying Minnesota law), unless the plaintiff shows "affirmative evidence" that the promisor had no intention to perform.  Hayes v. Northwood Panelboard Co., 415 N.W.2d 687, 690 (Minn. Ct. App. 1987).  A contract claim cannot be converted into a fraud claim, even when there is a bad faith breach of the contract.  Wild v. Rarig, 234 N.W.2d 775, 790 (Minn. 1975).

_____

[4]The district court did not err in applying Minnesota law to dismiss the claims for negligent performance, violation of the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code Ann. §§ 17.41 et seq., or unjust enrichment.  Minnesota does not recognize negligent performance claims.  Lesmeister v. Dilly, 330 N.W.2d 95, 102 (Minn. 1983), and the deceptive trade practices claim rests on a Texas statute not available under Minnesota law.  Finally, Minnesota does not allow recovery under an unjust enrichment theory when there is an express contract which governs the parties' relations.  Sharp v. Laubersheimer, 347 N.W.2d 268, 271 (Minn. 1984).

On a motion for summary judgment, the nonmoving party must set forth specific facts sufficient to raise a genuine issue for trial and cannot rest on allegations in the pleadings. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

Astraea has not made out a claim of misrepresentation based on Northwest's statements before the contracts were executed. It made no showing that at the time Northwest entered into the contracts, Northwest had the present intent not to perform its responsibilities or that it knew its statements were false. To avoid summary judgment, Astraea had the burden to show each element of the fraud claim.[5] Since it did not, the district court did not err in granting summary judgment.

_____

[5]On appeal, Astraea claims it also pled fraud based on misrepresentations about information and parts Northwest provided after the contracts were executed. Astraea's counterclaims do not clearly allege such a theory, but even if they did, it appears that theory would fail. After discovering the alleged errors in information and problems with parts, Astraea continued to perform under the contracts and ultimately completed performance. By continuing to perform after the alleged fraud was discovered, Astraea waived any recovery in fraud. Zochrison v. Redemption Gold Corp., 274 N.W. 536, 539 (Minn. 1937) (party cannot elect to perform after discovering fraud and still recover for it).

B.

Astraea also argues that the district court erred by applying Minnesota law and dismissing its slander, defamation, and libel claims. Astraea contends that the conduct giving rise to the claims occurred in Texas, and that Texas law should therefore apply.

In a diversity case, a federal court applies the choice of law rules of the forum state. In this case that means Minnesota choice of law rules. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). The first step in Minnesota is to consider whether a conflict actually exists between the different states and whether there would be constitutional problems with either law. Jepson v. General Cas. Co. of Wis., 513 N.W.2d 467, 469 (Minn. 1994). If there is an actual conflict and both laws can constitutionally be applied, then five factors are considered in order to make a choice: "(1) predictability of result; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interest; and (5) application of the better rule of law." Id. at 470.

Minnesota law considers a corporation a public figure and requires it to show that a statement was made with actual malice to establish a defamation claim. See Jadwin v. Minneapolis Star & Tribune Co., 367 N.W.2d 476, 487 (Minn. 1985) (malice standard applies to heavily regulated corporation in securities industry). Astraea and Northwest are both heavily regulated by the Federal Aviation Administration, and under Jadwin both would appear to be public figures. Texas law, on the other hand, does not consider a corporation a public figure unless it has entered a public controversy in order to influence the outcome. See Durham v. 

-12-

Cannan Comms., Inc., 645 S.W.2d 845, 851, (Tex. Ct. App. 1982). Astraea asserts that this difference between Minnesota and Texas law does not present a real conflict because the Minnesota actual malice standard has only been applied to media entities. In applying its defamation law, however, Minnesota has not indicated that distinctions should be made based on the media status of a defendant when the statements were made about someone in the public realm. See Britton v. Koep, 470 N.W.2d 518, 521 (Minn. 1991) ("Minnesota affords to nonmedia defendants the same first amendment protection for criticisms of public officials that it grants to the mass media."). There is thus a conflict in laws.

The substantive law of either state could constitutionally be applied because they each have significant contacts with the case, so that choice of either state's laws would be "neither arbitrary nor fundamentally unfair." Allstate Ins. Co. v. Haque, 449 U.S. 302, 312-13 (1981) (plurality opinion). Astraea's headquarters are in Texas, and republication of the statements occurred in Texas. Northwest's headquarters are in Minnesota, and the statements giving rise to the claims were made in Minnesota and first published there.

The question then is which state law should be applied under the Minnesota choice of law factors. Under the five choice influencing considerations, the first (predictability of results), second (maintenance of interstate order), and fourth (advancement of the forum's interests) have the most relevance in this case. The third factor, simplification of the judicial task, has no real significance since either state law could easily be applied.

The first factor, predictability of results, is most relevant when parties have expectations about the applicable law, such as in "consensual transactions where people should know in advance what

law will govern their act," but has less relevance in cases such as accidents when the parties could not reasonably have such expectations. Milkovich v. Saari, 203 N.W.2d 408, 412 (Minn. 1973). Here, the statements contained in the newspaper articles were made in Minnesota to a local newspaper, were first published in Minnesota, and involved the performance of contracts that the parties had agreed would be governed by Minnesota law. Although the statements were subsequently republished in Texas, it is unlikely that Northwest expected Texas law to apply to statements made to a newspaper in Minnesota. This factor therefore points to applying Minnesota law.

Maintenance of interstate order is satisfied if applying Minnesota law would not show disrespect for Texas' sovereignty or impede interstate commerce. Jepson v. General Cas. Co. of Wis, 513 N.W.2d 467, 471 (Minn. 1994). In examining this factor, a court looks at the contacts the state has with the issues being litigated, Myers v. Government Employees Ins. Co., 225 N.W.2d 238, 242 (Minn. 1974), and the risk of encouraging forum shopping by applying that state's law. Hague v. Allstate Ins. Co., 289 N.W.2d 43, 49 (Minn. 1979), aff'd on other grounds, 449 U.S. 302 (1981).

Here, Minnesota has several important contacts with the issues being litigated since one of its residents made the comments in the state. The statements were made to a Minnesota newspaper, and they were initially contained in an article published in that newspaper. Texas also has contacts because the statements were made about a Texas corporation and were republished in Texas. Minnesota law is more favorable to Northwest than Texas law, a situation which could lead to forum shopping. Northwest's complaint for breach of contract (to which Astraea added its defamation counterclaims) could reasonably be expected to be raised in a Minnesota court, however, since one of the contracts expressly provided that Astraea

-14-

submitted to personal jurisdiction in Minnesota and all stated that Minnesota law would govern.  Applying Minnesota law would thus not show disrespect for Texas.

The fourth factor, advancement of the forum's interests, is relevant to this case and considers both Minnesota's governmental interests and the relative interests of Texas.  Nesladek v. Ford Motor Co., 46 F.3d 734, 739 (8th Cir.), cert. denied, 116 S. Ct. 67 (1995).  Minnesota's governmental interests as expressed by the Minnesota Supreme Court in Jadwin are to limit damages to the reputations of heavily regulated corporations to cases where there is actual malice.  Jadwin, 367 N.W.2d at 487.  This policy is based on the court's belief that highly regulated corporations should be subject to the same level of scrutiny as public figures because of the "strong interest in the free flow of commercial information."  Id.  Texas also has a strong policy to "ensure broad liberty of speech", Davenport v. Garcia, 834 S.W.2d 4, 8 (Tex. 1992), but it does not consider all corporations public figures and would sometimes allow a corporate plaintiff to recover without showing actual malice.  Minnesota's interest in encouraging the free flow of commercial information is implicated because the alleged defamatory statements were made to and published in a Minnesota newspaper and were at least partly about a Minnesota corporation.  Both states have an interest in providing relief for tort victims, although Texas would sometimes permit recovery for a corporate plaintiff without a showing of actual malice.  Applying Texas law in this case, however, would directly undermine Minnesota's policy while the application of Minnesota law would not so directly conflict with Texas policy.  On balance, this favors applying Minnesota's defamation law.

The fifth factor, the question of the better law, does not need to be reached, since the previous factors show that it was

-15-

appropriate to apply Minnesota law.  <u>Myers</u>, 225 N.W.2d at 244.  It would not be counter to the parties' expectations to apply Minnesota law, and Minnesota had contacts with the dispute giving rise to significant state interests which would be undermined by applying Texas law, making application of Minnesota law fair.

Astraea argues that even under Minnesota law, summary judgment for Northwest on the defamation claims should not have been granted because it made a sufficient showing of malice.  To avoid summary judgment, Astraea had to show with "convincing clarity" that Northwest made its statements with actual malice.   <u>Jadwin</u>, 367 N.W.2d at 483.  Actual malice means "with knowledge that the statements were false or with reckless disregard of whether they were true or false."  <u>Britton</u>, 479 N.W.2d at 524.  Actual malice is not established by showing that a reasonably prudent person would have investigated the statement before publishing it, but instead requires a demonstration that the "defendant in fact entertained serious doubts as to the truth of [its] publication."  <u>Britton</u>, 470 N.W.2d 524 (quoting <u>St. Amant v. Thompson</u>, 390 U.S. 727, 731 (1968)).

There is no evidence in the record that Northwest had any doubts, let alone serious doubts, about the truth of the statements.  The Northwest representative told the newspaper about problems discovered on aircraft on which Astraea had worked.  Astraea claims there is actual malice because Northwest refused to retract the statement and further investigation on its own computer system could have shown that Astraea was not responsible for the reported problems.  This evidence does not show that Northwest had any doubts about the statements or that it had reason to investigate.  Astraea has not shown actual malice, and the district court did not err in granting summary judgment on the defamation claims.

IV.


In sum, there was personal jurisdiction over Astraea in Minnesota, and the district court did not err in applying the law or dismissing the counterclaims on summary judgment.  For these reasons, the judgment is affirmed.


A true copy.


        Attest:


                CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.