# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-2512

_____

American Home Assurance Company, &ast;

                                &ast;

        Plaintiff-Appellant      &ast;

                                &ast;

        v.                        &ast;

                                &ast;

L & L Marine Service, Inc.,        &ast;   Appeal from the United
                                &ast;   States District Court for
        Defendant,             &ast;   the Eastern District of
                                &ast;   Missouri.

Insurance Company of North America,  &ast;

                                &ast;

        Garnishee,             &ast;

                                  &ast;

American Steamship Owners Mutual    &ast;
Protection and Indemnity Association, &ast;
Inc.,                           &ast;

                                &ast;

        Garnishee-Appellees.     &ast;

_____

Submitted: February 11, 1998
Filed: August 11, 1998

_____

Before McMILLIAN and HANSEN, Circuit Judges, and DAVIS,&ast; District Judge.

_____

&ast;The HONORABLE MICHAEL J. DAVIS, United States District Judge for the District of Minnesota, sitting by designation.

_____

DAVIS, District Judge.

American Home Assurance Company appeals the judgment of the district court[1] dismissing its writ of execution and summons of garnishment against American Steamship Owners Mutual Protection. We affirm.

## BACKGROUND

This case arises from the grounding of the tug Maya and the barge Apex Chicago off the coast of Massachusetts. The facts of this case can be found as stated in the underlying action, American Home Assurance Co. v. L&L Marine Service, 875 F.2d 1351, 1352 (8th Cir. 1989). In October 1981, the tug was towing the barge from Carteret, New Jersey to Boston, Massachusetts, carrying a cargo of 1.76 million gallons of gasoline owned by Apex Oil. Both the tug and barge were owned by Central Barge & Boat Co., which chartered them to Apex R.E. & T. Inc. ("Apex Towing"), a subsidiary of Apex Oil. Pursuant to an agreement with Apex Towing, L&L Marine provided the crew to operate the tug Maya.

Despite warnings of inclement weather, the crew of the Maya continued for its destination. Eventually, the tow cable broke but the crew of the Maya did not discover that the barge had come adrift until 30 minutes later because of the intensity of the storm. When the Maya went back to retrieve the barge, it was aground and leaking gasoline through a gash in its hull. In attempting to pull the barge from the rocks, the Maya backed into its bow thus further damaging the barge. The Maya eventually lost control and was stranded with the barge. With the assistance of others, both the tug and barge were eventually freed and the cargo of gasoline was transferred to another barge for completion of the voyage. 875 F.2d at 1353.

_____

[1]The Honorable George F. Gunn, Jr., late a United States District Judge for the Eastern District of Missouri.

Both Apex Towing and Apex Oil were insured for this voyage by Plaintiff/Appellant American Home Assurance Co. ("American Home"), which subsequently paid almost $200,000 in claims relating to the accident, including the amount of gasoline lost in the accident, cleanup costs, the cost of repairing the barge, and costs incurred in transferring the oil for completion of the voyage. As subrogee of Apex Towing and Apex Oil, American Home filed suit against L&L Marine for the allegedly negligent operation of the Maya by L&L Marine's crew. In that underlying suit, the district court found and this Court affirmed that the accident was caused equally by the negligent navigation of the Maya by L&L Marine's crew and by the unseaworthy condition of the tug provided by Apex Towing. American Home was ultimately awarded judgment for one-half of the sum of provable damages, which was calculated to be $103,463.61. However, at the commencement of the suit, L&L Marine was and remains insolvent.

To collect on its judgment awarded in the underlying action, American Home subsequently brought a writ of execution and summons of garnishment against Garnishees American Steamship Owners Mutual Protection and Indemnity Association ("American Steamship") and Insurance Company of North American ("INA") as insurers of L&L Marine under maritime protection and indemnity policies of insurance. Fed. R. Civ. P. 69(a). In April 1997, the district court dismissed this action against Defendants. Pursuant to admiralty jurisdiction, the district court applied federal choice of law rules to determine which state's substantive law governed the maritime contract at issue. The district court concluded that New York law governed and the action against American Steamship should be dismissed because New York law prohibits a direct action against a marine insurer. Although the district court also dismissed the action against INA, American Home appeals the dismissal of American Steamship only and does not challenge the dismissal of INA on appeal.

## DISCUSSION

This Court reviews a district court's choice of law determination de novo. Northwest Airlines v. Astraea Aviation Services, Inc., 111 F.3d 1386, 1392 (8th Cir.

1997); <u>Horn v. B.A.S.S.</u>, 92 F.3d 609, 611 (8th Cir. 1996).

The parties do not dispute the district court's determination that it had admiralty jurisdiction over the case and that federal choice of law rules determine which state's substantive law should apply to the maritime contract. <u>Aqua-Marine Constructors, Inc. v. Banks</u>, 110 F.3d 663, 670 (9th Cir. 1997), *cert. denied,* 118 S.Ct. 339 (1997). Under federal choice of law rules, courts determine which state's law applies to maritime contracts by "ascertaining and valuing points of contact between the transaction [giving rise to the cause of action] and the states or governments whose competing laws are involved."  <u>Advani Enterprises , Inc. v. Underwriters at Lloyds</u>, 140 F.3d 157, 162 (2nd Cir. 1998) (quoting <u>Lauritzen v. Larsen</u>, 345 U.S. 571, 582 (1953)).

The parties agree that the "most significant relationship" test established in Restatement (Second) of Conflict of Laws § 188 provides the modern analysis as to which contacts should be taken into account.  <u>Advani Enterprises , Inc.</u>, 140 F.3d at 162; <u>Aqua-Marine Constructors, Inc.</u>, 110 F.3d at 674.  The sole dispute at issue in this case is whether consideration of those factors mandates application of New York or Missouri law.  In relevant part, Restatement § 188 provides as follows:

> In the absence of an effective choice of law by the parties, the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
> (a) the place of contracting,
>
> (b) the place of negotiation of the contract,
>
> (c) the place of performance,
>
> (d) the location of the subject matter of the contract, and
>
> (e) the domicil, residence, nationality, place of incorporation and

place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws § 188(2) (1971).

American Home, a New York corporation, seeks to recover its judgment against L&L Marine, a Missouri corporation, from American Steamship, a New York corporation and indemnity insurer of L&L Marine. Thus, the dispute in this action is between American Home, a New York corporation, and American Steamship, also a New York corporation.

American Home argues that consideration of the Restatement factors requires application of Missouri law in this case. American Home asserts that both L&L Marine and Apex Towing are Missouri residents for whose benefit the insurance contract at issue was procured. However, because neither L & L Marine nor Apex Towing are parties to the present action, we conclude that their place of residence is not significant in our choice of law analysis.

American Home further asserts that Missouri has the greater interest in applying its law because of its significant interest in protecting its citizens, residents, and corporations. American Home primarily relies on Aqua-Marine Constructors to support its position. In that case, an Oregon resident and owner of a barge sued in Oregon to recover under a performance bond and the court considered which state's law should apply. The court found that California, Oregon, Washington, and Costa Rica all had significant contacts with the performance bond: the bond was issued by a Costa Rican resident, the bond was executed in California, the party for whose benefit the bond was executed was an Oregon resident, and the vessel covered by the performance bond was to be redelivered in Washington. 110 F.3d at 674-75.

The court concluded that Oregon had a considerably greater interest in the

application of its law because of its strong interest in the protection of its citizens against the insolvency of a foreign insurer. In regards to the other locales, the court noted that no citizen of Washington was a party to or beneficiary of the contract at issue, California's citizen elected not to defend himself and default judgment was entered against him, and Costa Rica's citizen never argued that the law of its state should apply. Id.

However, Aqua-Marine is distinguishable from this case on the basis that in this action, no Missouri resident is seeking to enforce its rights under the policy in this case. Thus, application of Missouri law would not further the interests of that state. American Home contends that the mere fact that L&L Marine is a party to the policy at issue is sufficient to consider its state of residence in this Court's choice of law analysis. In support of such contention, American Home relies on Ahmed v. American Steamship Owners Mutual Protection & Indemnity Association, 444 F.Supp. 569 (N.D.Cal. 1978). In Ahmed, injured seamen obtained default judgments against their employers for personal injuries and subsequently sought recovery from the insurance carrier of the employers. In that case, the employers and the insurer all resided in New York and the contract at issue was negotiated and performed in New York. Thus, contrary to American Home's assertion, the residency of the insured was not a significant factor in Ahmed.

American Home argues that as subrogee of Apex Oil, it is entitled to enforce all the rights of Apex Oil, including the protection of Missouri law. However, American Home has failed to show that Apex Oil is entitled to the application of Missouri law in this case. Even taking into account that Apex Oil is a Missouri resident, we conclude that consideration of the Restatement factors weighs in favor of applying New York law in this case.

Under the remaining Restatement factors, American Home does not dispute that the place of contracting, negotiation, and performance of the contract were all in New

-6-

York. Furthermore, as the lower court noted, New York has a significant interest in protecting its maritime insurance industry from third party contract claims. Although Missouri has a similar interest in protecting its corporations, that interest is not compelling in this case because there is no Missouri resident seeking to enforce the terms of the policy.

Restatement (Second) of Conflict of Laws § 188(3) (1971) provides further support for the district court's determination that New York law governs this case. Under that provision, if the contract at issue was negotiated in the same state as the place of performance, the law of that state will usually apply. American Home does not dispute that the contract was negotiated and to be performed in New York. Therefore, section 188(3) provides that New York law should apply.

American Home does not dispute that under New York law, it is barred from bringing a direct action against American Steamship. Therefore, we affirm the order of the district court dismissing the writ of execution and summons of garnishment against American Steamship.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.