# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2786MN

_____

| | | |
|---|---|---|
| Holden Farms, Inc., a Minnesota Corporation; Rod Garness; Eugene C. Ward; Randy Swanson; Rick Anderson d/b/a Circle A Farms; Tim Sanborn; AJ Farms, a Minnesota General Partnership; Dennis Kofstad; Marlin Kruckeberg; and Pork Avenue, LLP, a Minnesota Limited Liability Partnership, | * * * * * * * * * * | |
| Appellants, | * * * * | On Appeal from the United States District Court for the District of Minnesota. |
| v. | * * | |
| Hog Slat, Inc., a North Carolina Corporation; BCM Manufacturing, LTD., a Canadian Corporation; and Double L Group LTD., an Iowa Corporation, | * * * * * * | |
| Appellees. | * | |

_____

Submitted: March 10, 2003
Filed: October 28, 2003

_____

Before WOLLMAN, RICHARD S. ARNOLD, and MURPHY, Circuit Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.

In this case an ultimate buyer sues up the stream of commerce alleging warranty, contract, and tort claims against the direct seller, tort and warranty claims against the distributor, and tort and warranty claims against the manufacturer. The District Court dismissed all claims on motions to dismiss and for summary judgment. We affirm in part and reverse in part.

I.

Holden Farms and the nine other plaintiffs (whom we shall sometimes collectively call Holden Farms) produce and market hogs. Between August 29, 1994, and September 5, 1997, plaintiffs entered into ten contracts with Hog Slat, a North Carolina corporation, for the construction of hog nurseries. Seven of the ten contracts were entered into by Barry Holden on behalf of Holden Farms. The other three contracts were entered into by the remaining plaintiffs. The plaintiffs and Hog Slat agree that all of the contracts were fully integrated agreements. Five of the ten total contracts contained a choice-of-law clause stating that "[t]his Contract is controlled and governed, and the parties agree to be bound, by North Carolina law." The other five contained a choice-of-law clause stating that "[t]his Contract is controlled and governed, and the parties agree to be bound, by Iowa law."

Holden Farms and the nine other plaintiffs desired to expand their operations. As part of that expansion, Holden Farms wished to build hog nurseries, and contracted with Hog Slat for that purpose. Hogs are placed in a nursery after they are born but before they are finished for sale. The nurseries are built with slatted floors, supported by beams, so that the hogs' refuse does not contaminate their living space. The contracts provided that Hog Slat would install a plastic flooring manufactured by BCM Manufacturing, a Canadian corporation, and distributed by Double L Group, an Iowa corporation. BCM and Double L were not parties to any of the contracts.

In April 1994, Holden Farms acted as host for a sales presentation by Double L and Hog Slat to explain the advantages to hog farmers of a new plastic flooring, Filter Eeze Maxima, to be used in the hog nurseries. Double L was BCM's sole distributor of Maxima flooring in the United States. As part of promoting the Maxima flooring to Holden Farms, Double L prepared a letter and promotion brochure. The letter was provided to Holden Farms by a Double L representative named Borcherding. The letter stated that Mr. Borcherding was a "representative of BCM Manufacturing," but it was apparently understood by Holden Farms that Mr. Borcherding also represented Double L. Importantly for this case, the letter also stated that the "Filter-Eeze Ten-year non-prorated warranty is proven!" The brochure, prepared by Double L, but carrying a Hog Slat logo, also referred to a ten-year warranty. The executed contracts explicitly stated, however, that all warranties extended under the contracts were "only for one (1) year from the date of substantial completion or for such period as the manufacturer's warranty, whichever is less." The contracts did not mention any ten-year warranty, although they did refer to a manufacturer's warranty.

Installation of the first three nurseries was completed by Hog Slat in October 1994, and the other seven nurseries were completed over the next several years. Hog Slat followed BCM's installation specifications, which called for the use of steel beams to support the flooring. In the summer of 1998, Holden Farms began to notice problems with the flooring in the first three nurseries built. The constant exposure to hog waste caused the steel support beams to swell and corrode, which in turn caused the plastic floor to buckle. The hogs were able to lift the buckling slats with their snouts, creating gaps in the flooring that they fell through into the manure pit below. Approximately 50 feeder hogs were killed as a result, and Holden Farms had to replace the flooring.

Holden Farms filed suit against Hog Slat, BCM, and Double L. It alleged that Hog Slat was in breach of its contracts, violated its express and implied warranties, and was liable for negligent design and negligent misrepresentation. Holden Farms alleged, as well, that BCM violated its warranty and was liable for negligent design and negligent misrepresentation. Finally, plaintiff alleged that Double L had violated its warranty and was liable for negligent misrepresentation. Plaintiff sought replacement-cost damages, business-interruption damages, and other expenses.

Hog Slat moved to dismiss the claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that the claims were barred by the statute of limitations, the parol-evidence rule, and the economic-loss doctrine. A Magistrate Judge recommended dismissal of the contract and warranty claims against Hog Slat because the claims were barred by the one-year time limitation for bringing claims agreed to in the contract and by the parol-evidence rule. Determining that the choice-of-law clause governed the tort claims, the Magistrate Judge recommended that the tort claims be dismissed except as to the loss of the hogs. Under Iowa and North Carolina law, recovery for injuries based on the flawed flooring was precluded by the economic-loss doctrine. The doctrine provides that a buyer may not recover from a seller or other person claimed to have made warranties with respect to sold goods in a tort action for economic loss to the goods themselves. Recovery may be had for such loss only in a warranty or contract action. The District Judge adopted the Magistrate Judge's recommendation.

Double L filed an answer generally denying the allegations and filed cross claims against Hog Slat and BCM. Hog Slat filed an answer as to the remaining claims against it and brought cross claims against BCM and Double L. BCM filed an answer generally denying all claims.

Next, Hog Slat brought a motion for summary judgment. Soon after, BCM brought its own motion for partial summary judgment, excepting damages concerning

-4-

the hogs. Double L moved for summary judgment on all claims. The District Court granted Hog Slat's motion as to the negligent-misrepresentation claim, holding that Hog Slat owed Holden Farms no duty. The Court, however, preserved the negligent-design claims but reiterated that it had limited those claims to the loss of the hogs. Double L was granted summary judgment on all claims against it, and BCM was granted summary judgment on all claims against it except those relating to damages from the loss of the hogs.

The District Court's ruling left Holden Farms with only the claims for the loss of hogs surviving. The parties stipulated to the dismissal of all remaining claims, making the order of the District Court final. This appeal followed. We affirm in part and reverse and remand in part.

II.

"In considering a motion to dismiss, we must assume that all the facts alleged in the complaint are true. The complaint must be liberally construed in the light most favorable to the plaintiff. A Rule 12(b)(6) motion to dismiss a complaint should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts which would entitle the plaintiff to relief. Whether a complaint states a cause of action is a question which this court reviews de novo." Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994) (internal citations omitted).

We review a grant of summary judgment de novo. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. The non-moving party is entitled to all reasonable inferences based on the facts. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

We shall address the claims against each party in turn.

## III.

Holden Farms argues that the District Court erred when it dismissed its contract claims against Hog Slat, dismissed its non-hog-loss tort claims against Hog Slat, and granted Hog Slat's summary-judgment motion on its negligent-misrepresentation claim. We disagree.

## A.

The District Court dismissed Holden Farms' breach-of-contract claim against Hog Slat because the one-year time limitation for bringing suit, set out in Article IV(G) of the contracts, had expired.[1]

---

[1]Article IV(G) of the contracts provides:

> Warranty: Contractor warrants to Owner that materials and equipment furnished under this Contract will be new and of good quality, unless otherwise required or permitted under the Contract Documents and in accordance with the manufacturer's warranties, and that the Work will be free from defects not inherent in the quality required or permitted and will conform to the Contract Documents. Provided, however, that any warranty is subject to such reasonable tolerances and variances as are usual and customary in the trade and subject to such Article VIII below, the aforesaid warranties are only for one (1) year from the date of substantial completion or for such period as the manufacturer's warranty, whichever is less.
>
> There are no other warranties of any kind expressed or implied, oral or written. Contractor disclaims any other warranties.

Holden Farms argues that the limiting language bars only actions for violation of warranty, but does not preclude other claims for breach of contract. It concedes that the warranty period had expired, but argues that the limitation made in Article IV(G) applied only to the promises made in that Article. It places great weight on the title of Article IV(B): "Contractors Additional Obligations." Thus, since it fashions its suit as a breach of Article IV(B)[2] of the contract, it argues that the District Court erred in dismissing its suit. We disagree.

This issue is governed by North Carolina and Iowa law. Neither Holden Farms nor Hog Slat challenges the choice-of-law provision as it applies to the breach-of-contract claims. Because the analysis is the same under either state's law, we do not separate our discussion by state.

We think Article IV(G) shows that the parties intended the time limitation for initiating a suit to apply to the whole contract.[3] The language of the article discusses both workmanship and the quality of goods used. As such, it is meant as a general limitation setting out when an action on the contract must be brought.

Further, even were we not convinced that the parties intended Article IV(G) to create a general one-year time limit for initiating suit, Article VIII of the contracts would bar such claims. Article VIII provides, in part, that "[i]n all events, however, Owner's placement of the hogs in any building shall constitute an acceptance of that building 'as is' with all defects in materials or workmanship." Thus, when Holden

---

[2]Article IV(B) provides, among other things, that Hog Slat will use its "best skill and attention" in completing the nurseries, and that it will "be solely responsible for all construction means, methods, techniques, sequences, and procedures."

[3]See Farm & City Ins. Co. v. Potter, 330 N.W.2d 263, 265 (Iowa 1983) ("[W]e give these words their ordinary rather than a technical meaning."), and Root v. Allstate Ins. Co, 272 N.C. 580, 587, 158 S.E.2d 829, 835 (1968) (applying a plain-language approach to interpreting a contract).

Farms placed hogs in the nurseries it gave up the right to sue for breach of contract.

## B.

Holden Farms next asserts that the District Court erred in dismissing its non-hog-loss related tort claims. First, it argues that the District Court incorrectly applied Northwest Airlines v. Astraea Aviation Serv., 111 F.3d 1386 (8th Cir. 1997), and that Minnesota law governs the tort claims against Hog Slat. Second, it argues that its claims are not barred by Minnesota's economic-loss doctrine. Because we disagree with the first argument, the second argument becomes moot. We affirm the District Court's dismissal of these claims.

## 1.

Holden Farms argues that the District Court erred in holding that, under Northwest Airlines, the tort claims against Hog Slat should be governed by the choice-of-law provisions set out in the Holden Farms/Hog Slat contracts. We disagree. The essential principle of Northwest Airlines is that, under Minnesota law, if analysis of the claims connected to a contract involves interpretation of the contract, then the forum will apply the contractual choice-of-law provisions to the tort claims. Id. at 1392. Here, both the negligent-design and negligent-misrepresentation claims speak to the provisions of the contract. Just as in Northwest Airlines, "[a]lthough mainly styled as torts, these claims stem from [Hog Slat's] alleged failure promptly to provide functioning parts . . . as required under the contracts." Ibid. The rule may be harder to understand with respect to the negligent-misrepresentation claims, but the analysis is simplified if one looks to what the allegedly negligent misrepresentation was. Holden Farms alleges that Hog Slat negligently promised that the goods would be as warranted for ten years, and that they had a twenty-year proven performance record, at the April 1994 meeting. Whether such tortious activity occurred requires an analysis of whether the contract included such warranties and

of what the warranties meant. Thus, in analyzing the tortious behavior we are essentially analyzing the contract. Therefore, the Northwest Airlines rule applies, and the tort claims against Hog Slat will be governed by North Carolina and Iowa law.

2.

We have held that five of the contracts are governed by North Carolina law, and five by Iowa law. Holden Farms argues that its tort actions are not barred even if the laws of these states are applied. We first address North Carolina law.

Under the law of that state, "a tort action does not lie against a party to a contract who simply fails to properly perform the terms of the contract, even if that failure to properly perform was due to the negligent or intentional conduct of that party, when injury resulting from the breach is damage to the subject matter of the contract." Spillman v. American Homes, 108 N.C. App. 63, 65, 422 S.E.2d 740, 741-42 (1992). Spillman is a case involving the sale and installation of a mobile home, and is analogous to the case at bar. The North Carolina Court of Appeals barred Spillman from pursuing his negligent-design claim. So here, where Holden Farms claims that the hog houses it bought were negligently designed, the negligent-design claim is barred under North Carolina law.

In North Carolina, this economic-loss doctrine, as it is known, appears to apply to all tort actions involving the sale of goods in which damages are alleged to have resulted from defects in the goods sold. The language we have quoted from Spillman refers simply to "tort action[s]," and does not appear to distinguish between negligent-design claims and, say, negligent-misrepresentation claims. Accordingly, North Carolina's economic-loss doctrine bars both tort claims Holden Farms seeks to assert. We recognize that a contrary implication might be drawn from a recent federal case (not cited by the parties), Wilson v. Dryvit Systems, Inc., 206 F. Supp. 2d 749 (E.D.N.C. 2002). The case involved the sale of a new home, and the plaintiffs

claimed that covering or "cladding" that was supposed to protect the exterior of the building was defective. Claims were stated for negligence, gross negligence, negligent misrepresentation, fraud, and unfair and deceptive acts and practices. The District Court granted summary judgment for the defendants on all claims. It first discussed a group of claims it referred to as "Negligence claims." Id. at 753. These claims alleged, among other things, that the defendant had been " 'negligent in the design . . . and warning of the' [exterior covering]." Ibid., quoting Complaint ¶ 33. The Court explained:

> North Carolina has adopted the economic loss rule, which prohibits the purchaser of a defective product from bringing a negligence action against the manufacturer or seller of that product to recover purely economic losses sustained as a result of that product's failure to perform as expected. Instead, such claims are governed by contract law.

Ibid. (citations omitted). This doctrine, the Court held, barred plaintiffs' claims for negligence and gross negligence.

The Court then went on to discuss the claim of negligent misrepresentation separately. See id. at 754-55. This claim was dismissed on the ground that any misrepresentations made by defendant had been made to general contractors and to the public, not to the plaintiffs. The separate discussion of the negligent-misrepresentation claim, and the fact that it was dismissed on a ground other than the economic-loss doctrine, may indicate that, for some reason, the Court believed that this doctrine barred only negligent-design claims, and not negligent-misrepresentation claims. The Court's opinion does not say that, nor does it cite any North Carolina case so holding, but this may have been what the Court intended. However that may be, we are not aware that any North Carolina state court case provides the basis for such a distinction, and, despite our respect for the federal district court in North

-10-

Carolina, and its judge, we are not persuaded that the Supreme Court of North Carolina would so hold.

There is an additional reason for rejecting the negligent-misrepresentation claim, if such a reason be needed. The tort does not exist when business people are dealing with each other at arm's length. Kindred of North Carolina, Inc. v. Bond, ____ N.C. App. ____, ____, 584 S.E.2d 846, 853 (2003). Hog Slat's alleged negligent misrepresentations did not concern matters known only to it. Contrast the situation in Kindred, where the misrepresentations had to do with financial information available only to the defendant, and the arm's length rule was not applied. We know of no reasons why Holden Farms could not have checked out with others the information provided to it by Hog Slat, BCM, and Double L. So, even if North Carolina's economic-loss doctrine, for some reason, does not apply to negligent-misrepresentation claims, this claim is barred in the present case under another doctrine of North Carolina law.

3.

Holden Farms also argues that its tort claims were not barred under Iowa law. We disagree and affirm the District Court.

As a general rule in Iowa, "[e]conomic losses to the product itself are excluded [from recovery in tort]." Richards v. Midland Brick Sales Co., 551 N.W.2d 649, 651 (Iowa App. 1996). In looking at a particular case, a court faced with both a product-liability claim and a breach-of-warranty theory, should "determine whether contract law or tort law is best suited to the nature of the loss claimed . . .." Ballard v. Amana Society, Inc., 526 N.W.2d 558, 562 (Iowa 1995) (internal citation omitted). Contract doctrine is appropriate when "the loss relates to a consumer or user's disappointed expectations due to deterioration, internal breakdown or non-accidental cause." Nelson v. Todd's Ltd., 426 N.W.2d 120, 125 (Iowa 1988) (internal citation omitted).

"Tort theory . . . is generally appropriate when the harm is a sudden or dangerous occurrence, frequently involving some violence or collision with external objects, resulting from a genuine hazard in the nature of the product defect." Ibid. We hold that contract law should prevail and bar the tort claims. The deterioration in the flooring was not immediate, and exposure to the hog waste was known and expected by Holden Farms. Thus, we hold that the injury reflects a disappointment in performance caused by the gradual deterioration and internal breakdown of the steel support beams. Therefore, Iowa contract law governs the dispute, and the Iowa negligent-design claims are barred by the economic-loss doctrine.

We know of no reason why the economic-loss doctrine in Iowa would not cover pre-contract-formation negligent-misrepresentation claims. In any event, Holden Farms has no colorable claim against Hog Slat. Under Iowa law, in order for a plaintiff to state a claim upon which relief can be granted, the defendant must "be in the business or profession of supplying information for the guidance of others." Sain v. Cedar Rapids Community School Dist., 626 N.W.2d 115, 125 (Iowa 2001). Such a requirement is "fundamental." Ibid. Hog Slat was not in the business of providing information. Its relationship to Holden Farms was as a seller of goods and was not advisory in nature. Holden Farms, therefore, can not state a claim upon which relief can be granted, as Hog Slat owed Holden Farms no duty.

IV.

We turn now to the claims against Double L. Holden Farms appeals from the District Court's grant of summary judgment on its negligent-misrepresentation and violation-of-express-warranty claims. We affirm in part and reverse and remand in part.

## A.

The first issue is whether the District Court applied the right law. The Court determined that "under the law of the case" North Carolina and Iowa law applied to the tort claims against Double L. The Court held that Double L got the benefit of the choice-of-law clause contained in the contracts between Hog Slat and Holden Farms. We respectfully disagree. Neither Double L nor BCM was a party to the Hog Slat/Holden Farms contracts. Neither signed the contracts and neither was bound thereby. Double L, BCM, and Hog Slat appeared to be a united front; they were all present at the April 1994 meeting, and made joint presentations. Their relationship, however, was merely as connecting tributaries in a stream of commerce. BCM made the Maxima flooring; Double L distributed the Maxima flooring to the ultimate seller, Hog Slat; and Hog Slat, in turn, sold the flooring to Holden Farms. The ultimate sale to Holden Farms certainly benefitted the upstream distributor and the upstream manufacturer, but the relationship among the manufacturer, distributor, ultimate seller, and buyer involved a series of contracts — not one aggregate contract. Thus, the choice-of-law clause does not govern Holden Farms' claims against Double L (or BCM) and we are obligated to reconsider the choice-of-law issue.

"Federal courts sitting in diversity are required to look to the choice-of-law principles of the forum state . . . and then apply the same law to the case as the forum state would." PVI, Inc. v. Ratiopharm GmbH, 253 F.3d 320, 329 (8th Cir. 2001). We hold that Minnesota courts would apply their own law in this situation. That state follows the significant-contacts test. Nodak Mut. Life Ins. Co. v. American Family Mut. Ins. Co., 604 N.W.2d 91, 94 (Minn. 2001). Although Double L is an Iowa corporation, all relevant events occurred in Minnesota. The April 1994 meeting was at Holden Farms in Minnesota; information provided to Double L was left in Minnesota; the flooring was installed in Minnesota; and the flooring eventually decayed in Minnesota. No other forum has a significant interest in the claims against Double L. In contrast, Minnesota has a significant interest in adjudicating alleged

-13-

torts and breaches of warranty occurring within its borders. It follows that Minnesota law applies.

B.

As noted above, the District Court dismissed Holden Farms' express-warranty claim against Double L as being barred by the Holden Farms/Hog Slat contract warranty limitation. Holden Farms contends that the District Court's ruling was in error, arguing that Double L provided a separate warranty, and that this warranty should be enforced.

1.

The District Court dismissed the warranty claims against Double L and BCM on two grounds. First, it held that if there were a ten-year warranty extended by Double L to Holden Farms, the warranty was limited by Article IV(G) of the contract between Holden Farms and Hog Slat. The District Court cited our holding in Hunter v. Texas Instruments, Inc., 798 F.2d 299, 302 (8th Cir. 1986), in support. Second, it held that the parol-evidence rule barred consideration of an independent warranty because the Holden Farms/Hog Slat contracts were integrated contracts that set forth the final expressions of the parties' agreements. We are constrained to disagree with both holdings.

First, Hunter does not apply to this case. Hunter involved a contract where the warranty limitation was clearly applicable to the manufacturer, as the manufacturer was expressly mentioned in conjunction with the limitation. Id. at 301 n.5. The Court held that the limitation was valid despite the fact that the manufacturer was not a party to the contract, because the buyer was put on notice. Id. at 302. Such is not the case in the contracts involved in the case at bar. Article IV(G) does not clearly mention either Double L or BCM in conjunction with the warranty limitation.

-14-

Instead, the contract says that "Contractor," defined elsewhere as Hog Slat, "disclaims any other warranties." Further, the inapplicability of the limitation to any manufacturer's warranties is presumed in Article IV(G)'s language. The warranty limitation states "the aforesaid warranties are only for one (1) year from the date of substantial completion or for such period as the manufacturer's warranty, whichever is less." By using the manufacturer's warranty period as an alternative measuring date, the contracts presume that there are different end dates for the warranties issued by Hog Slat and the warranties issued by others, and, therefore, at least implies that warranties other than Hog Slat's exist.

While the parol-evidence rule bars Hog Slat or Holden Farms, as parties to a final integrated agreement, from introducing "evidence of any prior agreement or a contemporaneous oral agreement," neither Double L nor BCM was a party to the Holden Farms/Hog Slat contract. Consequently, Double L can find no shelter under the parol-evidence rule.

We reverse the District Court's grant of summary judgment with respect to the breach-of-warranty claims against Double L and remand to the District Court for further proceedings.[4]

C.

We turn now to Holden Farms' appeal from the District Court's grant of summary judgment in favor of Double L on the negligent-misrepresentation claim. Holden Farms alleges that the District Court erred in applying Safeco Ins. Co. v. Dain

---

[4]Double L argues in the alternative that the District Court's dismissal of Holden Farms' contract claims against it should be affirmed on the ground that it, Double L, never gave Holden Farms any express warranty. The only warranty Double L gave, it argues, was to Hog Slat. The District Court did not reach this argument, and neither do we. The District Court may address it on remand.

-15-

Bosworth, Inc., 531 N.W.2d 867 (Minn. App. 1995). Safeco held that Minnesota recognizes no duty between parties engaged in arm's length negotiations for the purposes of negligent misrepresentation. Id. at 871-72. The Court based its opinion in part on the sophistication of the parties and in part on the lack of unity of interest between the parties. Id. at 872-73. Holden Farms argues that the District Court erred in granting Double L's summary-judgment motion, because there remained a question of material fact whether Holden Farms was a sophisticated party. We agree with the District Court's decision. Holden Farms is one of Minnesota's largest hog farmers. To label it unsophisticated would unduly minimize its place in the industry. Double L owed Holden Farms no duty for purposes of negligent misrepresentation.

V.

Lastly, we address Holden Farms' appeal from the District Court's granting of BCM's summary-judgment motion on express-warranty, negligent-design, and negligent-misrepresentation claims.

Because our analysis on the warranty claims and the negligent-misrepresentation claims is the same as it was for the claims against Double L, we affirm the District Court's dismissal of the negligent-misrepresentation claim for lack of duty, and we reverse and remand with respect to the express-warranty claim.

All that is left to consider is the negligent-design claim. Under the choice-of-law analysis laid out above, we believe the District Court applied the wrong law. Since BCM was not a party to the Hog Slat/Holden Farms contract, and thus not subject to its choice-of-law provisions, Northwest Airlines v. Astraea Aviation Services, supra, is inapplicable, and normal Minnesota choice-of-law analysis applies. Essentially for the reasons stated in our Double L analysis, we hold that Minnesota law governs the negligent-design claim.

-16-

Nonetheless, BCM argues that, under Minnesota law, the negligent-design claim is barred by the economic-loss doctrine. We disagree.

The controlling law on economic loss in this action is a statute, Minn. Stat. § 604.10(a),[5] which provides:

> Economic loss that arises from a sale of goods that is due to damage to tangible property other than the goods sold may be recovered in tort as well as in contract, but economic loss that arises from a sale of goods between parties who are each merchants in goods of the kind is not recoverable in tort.

We are not convinced that Holden Farms was a merchant in goods of the kind.

We acknowledge at the outset that there is a difficulty in the case law. In Regents of University of Minn. v. Chief Industries, 106 F.3d 1409 (8th Cir. 1997) (2 – 1 decision), this Court, citing Minn. Stat. § 336.2-104(1),[6] held that the University of Minnesota, when it purchased a grain dryer, (a) was a merchant, and (b) was a

---

[5]The Minnesota Legislature has enacted a new provision governing economic loss, Minn. Stat. § 604.101. The section applies only to claims arising from transactions which occurred on or after August 1, 2000. All the transactions in this matter occurred prior to August 1, 2000, and accordingly Minn. Stat. § 604.10 is the applicable statute in this case.

[6]Minn. Stat. § 336.2-104(1) provides: " 'Merchant' means a person who deals in goods of the kind or otherwise by occupation holds out as having knowledge or skill peculiar to the practices of goods involved in the transaction or to whom such knowledge or skill may be attributed by employment of an agent or broker or other intermediary who by occupation holds out as having such knowledge or skill." This statute is part of the Minnesota version of the Uniform Commercial Code, and predates the more specific economic-loss statute.

merchant in the goods of the kind sold.  Regents, 106 F.3d at 1411-12.  The Court reasoned that because the University "had purchased a number of such units over the prior thirty years, and had the advantage of a centralized purchasing department that solicited bids for the purchase," it had the requisite sophistication and knowledge to qualify as a merchant in the type of goods sold.  Id. at 1412.

In Jennie-O-Foods, Inc. v. Safe-Glo Prods. Corp., 582 N.W.2d 576 (Minn. App. 1998), the Minnesota Court of Appeals rejected our Regents analysis.  Jennie-O involved a suit between a turkey farmer and the manufacturer of heaters used in the turkey farm.  The Court held that "[i]n accord with Den-Tal-Ez and the Regents dissent, and based upon our independent conclusion that Minn. Stat. § 604.10(a) does not include within its provisions the broad definition of 'merchant' contained in Minn. Stat. § 336.2-104(1), we hold that Jennie-O was not a merchant in goods of the kind with respect to heaters and is not barred from recovering in tort."  Jennie-O, 582 N.W.2d at 579.[7]  Holden Farms argues that we should accept the Minnesota Court of Appeals' rejection of Regents.

Holden Farms' suggestion finds support in our law.  Although "various intermediate appellate [state] courts are not [binding on us], . . . they are persuasive authority, and we must follow them when they are the best evidence of what [state] law is."  Garnac Grain Co. v. Blackley, 932 F.2d 1563, 1570 (8th Cir. 1991).  Further, the Supreme Court has held that an intermediate state appellate court's decision "is a datum for ascertaining state law which is not to be disregarded by a federal court

_____

[7]Lloyd F. Smith Co. v. Den-Tal-Ez, Inc., 491 N.W.2d 11 (Minn. 1992), involved a suit between a non-privity owner and the manufacturer of a dental chair. Dr. Vukodinovich bought the dental practice and dental chair from a Dr. Stoffel. Dr. Stoffel, in turn, had purchased the practice and chair from a Dr. Shepard. The chair eventually caused a fire. The Court held that Dr. Vukodinovich was not a merchant in the type of goods sold, and allowed him to maintain a tort suit against the chair's manufacturer.

unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." West v. American Tel. & Tel., 311 U.S. 223, 237 (1940). Here, we have no data suggesting that the Minnesota Supreme Court would disagree with the Jennie-O holding. In fact, we presume that, if Jennie-O had been decided prior to Regents, our Court would have followed the case. Therefore, to the extent that Jennie-O and Regents disagree, we hold that Jennie-O controls.

Having decided that Jennie-O is the test for determining whether a sale of goods is between merchants, we now must determine whether Holden Farms qualifies as a merchant in goods of the kind sold.

In Marvin Lumber & Cedar Co. v. PPG Industries, 223 F.3d 873 (8th Cir. 2000), we defined the Jennie-O standard.[8] Marvin dealt with a seller of custom doors who purchased a weather-roofing chemical to apply to the doors. Id. at 883. We held that when "a manufacturer with sophisticated knowledge of a component purchases and incorporates that component into its product, the manufacturer is not merely a dealer with respect to the finished product, but with respect to the component part as well." Id. at 884. Thus, the Court reasoned, a manufacturer who acts solely as a consumer, and does not incorporate the purchased product into the final manufactured item will not be held to be a "merchant in goods of the kind" for purposes of Minn. Stat. § 604.10(a). Ibid. In the language of the Court, referring to Jennie-O, "a turkey farm is not in the heater business." Ibid. If the heater fails, the turkey farmer may sue the manufacturer in tort. Ibid.

We find both the reasoning and the example used by the Marvin Court controlling in this case. The flooring of a hog nursery is not incorporated into the hog

---

[8]We did not find it necessary to decide whether Jennie-O had superseded University of Minnesota, holding that the difference in the two standards would not matter to the outcome in Marvin. Id. at 883.

itself, and a hog nursery seems to be analogous to a heater in a turkey pen. Holden Farms is a consumer with respect to the hog nurseries, and its tort claims will not be dismissed because of the economic-loss doctrine. We reverse the grant of summary judgment as to the negligent-design claim against BCM and remand for proceedings consistent with our analysis above.

V.

To summarize: we affirm the District Court's dismissal of all claims against Hog Slat. As to Double L, we reverse the District Court's dismissal of the breach-of-warranty claim and affirm the dismissal of the negligent-misrepresentation claim. As to BCM, we affirm the dismissal of the negligent-misrepresentation claim. We reverse the dismissal of the warranty and negligent-design claims. As to those rulings that are reversed, the case is remanded to the District Court for further proceedings not inconsistent with this opinion.

It is so ordered.

_____